**John CARILLO,**

v.

**STATE of Rhode Island.**

No. 92–155–C.A.

Supreme Court of Rhode Island.

June 14, 2001.

3. The defendant's motions for leave to submit post-argument memoranda were denied by the Court.

Robert B. Mann, Providence, For Plaintiff.

Lauren Sandler Zurier, Aaron L. Weisman, Providence, For Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The applicant, John Carillo (Carillo or applicant), convicted in 1973 of murdering a correctional officer at the Adult Correctional Institutions (ACI), appealed the denial of his application for post-conviction relief. The basis for Carillo's appeal was that his due process rights were violated because the "true" nature of a plea agreement between the state and a witness who testified against him was not disclosed. We affirm the denial of post-conviction relief.

### Facts and Procedural History

In 1973, applicant was found guilty of murder and conspiracy for stabbing correctional officer Donald Price to death while Price was on duty at the ACI. The applicant was sentenced to life in prison on the murder charge and to a concurrent term of ten years for conspiracy. This Court affirmed the conviction in *State v. Carillo*, 122 R.I. 392, 407 A.2d 491 (1979), which contains a thorough recitation of the facts underlying the convictions.[1] There-

---

1. The applicant filed two previous applications for post-conviction relief, on grounds other than those asserted in the case before us, which were denied. *Carillo v. Brown*, 807 F.2d 1094 (1st Cir.1986); *Carillo v. Moran*, 463 A.2d 178 (R.I.1983).

fore, we relate here only those facts necessary to the disposition of this appeal.

At Carillo's trial in November 1973, Christopher Perry, who was a co-defendant in the murder case and who was a fellow inmate of Carillo's at the time of the murder, testified on behalf of the state. Perry testified that in the early morning hours of June 22, 1973, while Perry was speaking with Officer Price, he saw Carillo creep up behind Price and plunge a knife twice into his chest. Perry testified that in exchange for his testimony on behalf of the state and his pleading guilty to second-degree murder, he was promised that he would receive a sentence of "no more than forty-five years," that he would be transferred to a prison out of the state, and that he would be given a name change.

On cross-examination, applicant's counsel asked Perry, "Did anyone say anything to you in addition to [the agreement you described] to lead you to believe that your sentence might only be fifteen years or twenty years?" Perry answered in the negative. The prosecutor also informed the trial justice immediately before Perry's testimony that the agreement between the state and Perry was that the state would recommend to the court a sentence of no more than forty-five years. When the trial justice inquired about this detail, Perry confirmed the prosecutor's version of the agreement. In closing arguments, the prosecutor, attempting to emphasize Perry's credibility as a witness, stated,

"[Defense counsel] talks about Christopher Perry, a boy that's twenty years old. Who says he has a deal? A deal of 45 years? Measure it to your own life and your own expectancy of life, and the life that you've lived, and take 45 years and carve it out of your life, and see what kind of a deal that is. See what kind of a deal 45 years at the Adult Correctional Institution [sic] would be

to anyone closed up and to be incarcerated. And if that's a deal, and if that's a great interest, and if that is an encouragement to tell the truth on the stand, or to tell a lie on the stand, I don't know what a deal really is."

The jury returned a verdict that Carillo was guilty of first-degree murder and conspiracy, and he was sentenced to life in prison and ten years to run concurrently. In denying applicant's motion for a new trial, the trial justice characterized the evidence against Carillo as "overwhelming" and stated, "I firmly believe that all of the circumstantial evidence and physical evidence would have supported a guilty verdict on both counts against [applicant] without the eyewitness testimony of Perry."

In January 1974, the trial justice sentenced Perry "on the charge of murder in the second degree to which [he] pleaded guilty * * * to serve thirty years at the Adult Correctional Institutions." A ten year concurrent term was imposed on Perry for the charge of conspiracy to commit murder. In July 1974, while he was incarcerated in Oxford, Wisconsin, ten years of Perry's thirty-year sentence were suspended after a motion to reduce sentence was made by Perry's attorney.

Perry was released in 1982 and arrested in 1989, after which a justice of the Superior Court revoked the previous suspension of his sentence and reinstated the original thirty-year sentence, sending Perry back to the ACI. While at the ACI, Perry was housed for a time in the High Security Center, where applicant also resided. Apparently, applicant had learned that Perry's original January 1974 sentence had been modified. According to Carillo, Perry told him that this modification had been part of the agreement that Perry made in exchange for his testimony.

In September 1988, Carillo filed the instant application for post-conviction relief, that was amended in 1990 to include the claims that are the basis for this appeal.[2] In his amended application, Carillo claimed that the prosecutor knew during the 1973 trial that Perry expected to have his sentence reduced after the initial sentencing.[3] The applicant contended that the prosecutor deliberately failed to disclose this evidence, that it was exculpatory evidence that tended to impeach Perry's credibility, and that Perry's testimony was central to Carillo's conviction. According to Carillo, these facts represented a violation of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution. The applicant asked for a full evidentiary hearing on his allegations, and that request was granted.

In September 1990, an evidentiary hearing was held before a justice of the Superior Court to determine the validity of Carillo's allegations. Both Perry and Carillo testified.[4] At the close of the presentation of evidence, the state made an oral motion for a directed verdict under Rule 50 of the Superior Court Rules of Civil Procedure, and the case was continued for the submission of memoranda by the parties.

Carillo's application for post-conviction relief was denied in a January 1992 written decision in which the hearing justice found that at the time Perry testified against Carillo, Perry had been promised only that the charge would be reduced to second-degree murder and that there would be a ceiling of forty-five years on his sentence on his guilty plea to that charge. She found that before he testified against applicant, no promise had been made to Perry that at some later time he would receive a reduction of whatever sentence would be imposed upon him, nor had the issue of a reduction come up before Perry testified. The justice further found that the sentence reduction was discussed between the time Perry testified at Carillo's November 1973 trial and the time Perry was sentenced in January 1974. Accordingly, she wrote, "The [applicant] has failed to establish by a preponderance of the evidence either that the prosecutor misrepresented the plea negotiation with Perry, or that the prosecutor used false evidence or that the prosecutor failed to disclose exculpatory material." The hearing justice also found that Perry's testimony had "no special significance" in applicant's trial and that the case against him rested not so much on the word of Perry as it did on the testimony of other inmates and on physical evidence implicating Carillo. Carillo then filed the instant appeal.

On appeal, applicant contended that his conviction violated the requirements of due process under both the Rhode Island and United States Constitutions because the

2. The initial application principally raised constitutional issues relating to the carcinogenic properties of the use of a chemical agent on applicant's skin in the course of the investigation of the murder of Officer Price. Those claims were dismissed at the same time the court granted Carillo's request to amend the application to include the claims that are the basis for this appeal.

3. In the amended application for post-conviction relief, Carillo asserted that Perry had testified at the 1973 trial that by agreement he would be sentenced to thirty years and that

Perry's sentence had been reduced "to a total of twenty years to serve, with ten of those years suspended." That allegation appears inconsistent with the transcript of the 1973 trial and the transcript of the hearing on post-conviction relief.

4. At the time of the hearing, both defense attorneys who represented Perry during the plea negotiations had died, and the attorney who negotiated the agreement for the state and who had since been appointed to the bench was hospitalized.

state's failure to disclose to the defense the "true" nature of the plea agreement "and [its] significant contacts" with Perry deprived Carillo of the opportunity to fully cross-examine Perry and reveal Perry's motivation to testify against him. The applicant argued that "[t]he plea agreement as it was represented to the jury at the [applicant's] trial, unduly impressed the jury with the idea that Perry had virtually nothing to gain, and unduly bolstered Perry's credibility as a witness before them."

According to Carillo, the state was required to present to the jury the true nature of the plea agreement and to correct Perry's testimony to the extent any perjured testimony describing the agreement might have affected the witness's credibility. He maintained that intentionally not disclosing of evidence that was favorable to the accused or failing to disclose evidence whose value to the accused was such that the state knew or should have known of its significance but failed to disclose it, requires a new trial, citing our opinions in *In re Ouimette,* 115 R.I. 169, 342 A.2d 250 (1975) and *State v. Wyche,* 518 A.2d 907 (R.I.1986). Moreover, Carillo contended *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny mandate a new trial.

### Standard of Review

▪ "Post-conviction relief is available to any person in this state pursuant to G.L.1956 chapter 9.1 of title 10, who, after having been convicted of a crime, claims, '*inter alia,* that the conviction violated [his or her] constitutional rights or that newly discovered facts require vacation of the conviction in the interest of justice.' " *Powers v. State,* 734 A.2d 508, 513 (R.I. 1999) (quoting *Mastracchio v. Moran,* 698 A.2d 706, 710 (R.I.1997)).

▪ It is well settled that a hearing justice's findings of fact in post-conviction

relief hearings "are entitled to stand undisturbed on appeal in the absence of clear error or a showing that material evidence was overlooked or misconceived." *Simpson v. State,* 769 A.2d 1257, 1265 (R.I.2001) (quoting *Heath v. Vose,* 747 A.2d 475, 477 (R.I.2000) (per curiam)). However, because Carillo alleged that his rights under the Rhode Island and United States Constitutions were violated, "the ultimate determination concerning whether [his] constitutional rights have been infringed must be reviewed *de novo.*" *Powers,* 734 A.2d at 514 (citing *Ornelas v. United States,* 517 U.S. 690, 696–97, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911, 919 (1996)). Notwithstanding the *de novo* review of ultimate determinations with respect to constitutional rights, "*a reviewing court should take care * * * to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts.*" *Id.* (quoting *Ornelas,* 517 U.S. at 699, 116 S.Ct. at 1663, 134 L.Ed.2d at 920). Thus, we afford great deference to findings of historical fact by the hearing justice but review *de novo* whether constitutional rights were violated in reaching ultimate conclusions drawn from those facts.

The two primary questions that must be analyzed in the disposition of this appeal are: (1) Did the state fail to disclose or did it use perjured testimony in revealing the actual terms of the plea agreement between the state and Perry as they existed at the time Perry testified?; and (2) If the state did fail in this regard, is a new trial mandated under the Rhode Island and/or United States Constitutions?

### The Plea Agreement

▪ The applicant might be entitled to a new trial if he were able to establish that the state failed to disclose fully its agreement with Perry or that the state

presented perjured testimony by Perry who described its agreement with him. The hearing justice properly noted that applicant was required to establish the facts supporting his application for post-conviction relief by a preponderance of the evidence, citing *State v. Duggan,* 414 A.2d 788 (R.I.1980); *Palmigiano v. Mullen,* 119 R.I. 363, 377 A.2d 242 (1977), and ABA Standards for Criminal Justice, Post Conviction Remedies, Standard 22–4.6(d) (1980). The hearing justice found that Carillo failed to meet his burden on this threshold question. After our careful review of the record, it is our conclusion that in making this finding, the hearing justice was not clearly wrong, nor has it been demonstrated that she overlooked or misconceived material evidence.

Although out-of-context portions of Perry's testimony [5] and portions of a letter Perry wrote after he was arrested in 1989 to the justice who originally sentenced him [6] can be construed to support Carillo's allegations that before he testified, Perry had been promised a later sentence reduction, close questioning by the hearing justice made clear the sequence of events surrounding the negotiation of the plea agreement. The hearing justice and Perry engaged in the following colloquy:

> "THE COURT: * * * your lawyer, * * * first brought up the question of a sentence reduction [?]

"[Perry]: Right. He was the first one to bring it up. That was after I told my lawyer that I am going to testify and that I'm not going to go to trial.

"THE COURT: And you were agreeing to 45 years at that point[?]

"[Perry]: Yes.

"THE COURT: And you had agreed, okay, I will go in and testify against [applicant ?]

"[Perry]: Yes.

"THE COURT: And I will take 45 years.

"[Perry]: Yes.

"THE COURT: Then at some point your lawyer asked the prosecutor * * * about a sentence reduction.

"[Perry]: Yes.

"THE COURT: And [the prosecutor] said we'll talk about that later.

"[Perry]: Yes.

"THE COURT: Did you talk about it?

"[Perry]: See, this is the day that I did testify. Now, the time, from the time that I testified against [applicant] until the time I went back to court for myself to get sentenced I was told before you have no—We're talking about two different times here. I was told before I went into the courtroom upstairs to get sentenced that I was going to get sentenced to 45 years. It would be reduced to 30 years and later on 20 years. *Now, between the time I testified against [appli-*

---

5. For example, the following exchange occurred between Carillo's attorney and Perry:

> "Q: Your testimony then is that you understood the agreement to be, at the time you entered into it prior to your testimony at [applicant's] trial, that your sentence would be no more than 45 years. You would get 30 years subsequently. After you testified it would be reduced to 20 or ten years?
>
> "A: Yes, sir, and that's just what happened too."

6. In his letter, Perry disputed the reimposition of the thirty-year sentence after his 1989 arrest, stating in part:

> "My understanding of my sentence was that I would be sentenced to no more than 45 years. [The prosecutor] at that time told me in front of my lawyer that I would not get the 45 years but 30 years and some time later, he would have my sentence reduced to 20 or 10 years. That was part of the deal I was given for my testimony in the trial."

*cant] and the time I, myself, got sentenced [the prosecutor] and my lawyer did some talking to come up with some kind of agreement.*

"THE COURT: Well, then you weren't lying to the jury at the trial of [applicant].

"[Perry]: No, I didn't lie at the trial.

"THE COURT: Because at that point you knew you were getting 45 years.

"[Perry]: Yes.

"THE COURT: *Because the issue of reducing your sentence had never come up before you testified against [applicant]. It came up between the end of [applicant's] trial and the day you went for sentencing.*

"[Perry]: Yes. That was when [the prosecutor] said he would discuss that with my lawyer later." (Emphases added.)

Perry later testified that,

"As far as whether that thing there says about me going up in the courtroom and testifying and the most time I would get would be 45 years, right there is true. *When I went to get my sentence, okay, in front of Mr. Shea, that's when I was promised the reduction.*" (Emphasis added.)

Furthermore, when the hearing justice asked Perry, "[I]t was when you pleaded that you had some sense that you were going to get less than 45[?]" Perry responded, "Yes, that's when I was told that I would get the sentence reduction. And I got it three months later by [the prosecutor]." Thus, Perry ultimately made clear to the hearing justice that it was not until *after* he testified that he was led to believe that his sentence would be less than forty-five years. Therefore, at the time of trial, there were no additional facts that the state had to disclose to Carillo.

Because we affirm the hearing justice in her finding that at the time Perry testified,

he testified truthfully, we need not reach the question of whether the applicant is entitled to a new trial under this Court's holdings in *Wyche* and *In re Ouimette* or the holdings of the United States Supreme Court under *Brady* and its progeny.

In conclusion, we deny and dismiss the appeal and affirm the judgment of the Superior Court, to which we return the papers of the case.