STATE

v.

Ronald L'HEUREUX.

No. 2000–185–C.A.

Supreme Court of Rhode Island.

Jan. 10, 2002.

Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, Ronald L'Heureux, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

We have before us the defendant Ronald L'Heureux's initial appeal from his conviction for the manslaughter homicide of Natalino Faria, and his subsequent appeal from the decision of the trial justice following a partial remand hearing to determine whether the state complied with a defense discovery request for production of a Rehoboth police report. For the reasons we hereinafter set out, we deny and dismiss both appeals.

### Facts

On the evening of November 12, 1989, L'Heureux, a married man with three children, saw Natalino Faria (Faria) leave Minerva's Pizza in Seekonk, Massachusetts, with L'Heureux's former teenage mistress and babysitter, who was then dating and living with Faria. Armed with a .357 magnum and speedloaders of ammunition, L'Heureux followed the couple in his wife's car and proceeded to play "chicken" with them, forcing Faria to pull over on York Avenue in Pawtucket. The slightly built Faria then went over to speak with L'Heureux, whose vehicle was parked nearby. After the two exchanged brief words, L'Heureux reached out of his car window, grabbed Faria by the shirt, and fatally shot him with a hollow-point bullet in the chest and abdomen at point-blank

range.[1] L'Heureux later was indicted and charged with the murder of Faria.

**■** On October 31, 1990, after L'Heureux's trial in Superior Court, the trial jury returned a verdict of guilty on the lesser-included offense of voluntary manslaughter. On November 5, 1990, L'Heureux moved for a new trial on the traditional "interest of justice" grounds pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. Some years later, on March 2, 1994, L'Heureux filed a second motion for a new trial alleging now as grounds newly discovered evidence that he identified as being the November 10, 1989 Rehoboth police report detailing L'Heureux's vandalism complaint against Faria.[2] L'Heureux alleges that the trial prosecutor intentionally withheld the Rehoboth police report from his trial counsel in violation of Rule 16 of the Superior Court Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[3] After a hearing on March 25 and May 13, 1994, the hearing justice denied L'Heureux's motion for a

new trial based upon her determination that because the defendant himself had generated the police report and was fully aware of its contents, the prosecutor had not suppressed the Rehoboth police report in violation of Rule 16 or *Brady.* Furthermore, the hearing justice determined that the Rehoboth police report actually was immaterial to L'Heureux's prosecution.

L'Heureux appealed to this Court in 1996, and this Court remanded the case to the hearing justice to make factual findings on the question of whether the material relating to the Rehoboth police reports had been provided to the defendant as per his discovery requests. *State v. L'Heureux,* 683 A.2d 374, 375 (R.I.1996) (mem.).

At the remand hearing that took place on various dates between June 1998 and October 1999, numerous witnesses testified, including the trial prosecutor and L'Heureux's trial counsel. On February 11, 2000, the hearing justice gave her decision, and characterized as "ludicrous" L'Heureux's allegation that the Rehoboth police report had been withheld by the

---

1. Two days before the slaying, L'Heureux's home in Rehoboth, Massachusetts, had been vandalized, and L'Heureux believed that Faria was responsible for that incident. L'Heureux reported the vandalism to the Rehoboth police department on November 10, 1989, and blamed Faria. Faria never was charged.

2. It should be noted that L'Heureux's motion for a new trial on the grounds of newly discovered evidence was not timely filed. In an apparent effort to circumvent the Superior Court Rules of Criminal Procedure to permit the filing of this motion after the statutory period had passed, L'Heureux's then-attorney moved to vacate L'Heureux's original sentence, and the hearing justice granted the motion. However, this in no way extended the two-year period in which the motion must be filed. Rule 33 of the Superior Court Rules of Criminal Procedure explicitly states: "A motion for a new trial based on the ground of

newly discovered evidence may be made only before or within two (2) years after entry of judgment by the court * * *." L'Heureux was convicted on October 31, 1990. The motion for a new trial on the grounds of newly discovered evidence was not filed until March 2, 1994, more than *three years* after the entry of judgment.

3. Besides the three-page November 10, 1989 police report, other items were introduced at the hearing on L'Heureux's motion for a new trial. These items include: a card purporting to relate to a June 24, 1989 response of a Rehoboth police cruiser to L'Heureux's home; two logs of police activity concerning contact between L'Heureux and Rehoboth police after the November 10, 1989 vandalism complaint; and a November 12, 1989 dispatcher's report.

prosecution. She found "as a fact that the rules of discovery were not only complied with but exceeded [by the prosecution]." She answered pointedly this Court's remand question to her as to "whether the material relating to the Rehoboth police reports was provided to the defendant as per his requests" with "a resounding yes."

Here on appeal L'Heureux asserts that the trial justice was clearly wrong in her determination that the prosecutor in L'Heureux's jury trial had turned over the Rehoboth police report to defense counsel as soon as he learned of its existence. Additionally, L'Heureux has asserted in his initial appeal that the trial prosecutor knowingly used perjured testimony to convict L'Heureux in violation of his due process rights; that the state violated his due process rights by failing to disclose photographs of the vandalism to his home; and that his motion for a new trial should have been granted in the "interest of justice."

### Analysis

### I. Alleged *Brady* and Rule 16 Violation

■■■ "*[A] reviewing court should take care * * * to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts.*" *Carillo v. State*, 773 A.2d 248, 252 (R.I.2001) (quoting *Powers v. State*, 734 A.2d 508, 514 (R.I.1999)). L'Heureux argues that the hearing justice clearly erred in determining that the trial prosecutor did not withhold from defense counsel the November 10, 1989 Rehoboth police report. In light of all the information elicited at the remand hearing as well as the exten-

sive record of this case, L'Heureux's assertion crosses the threshold of absurdity.

At L'Heureux's trial, the prosecution presented witnesses who testified that among the reasons L'Heureux killed Faria was L'Heureux's belief that Faria had vandalized L'Heureux's home two days before the killing. There also was testimony about L'Heureux's anger at Faria for revealing to L'Heureux's wife audiotape evidence of L'Heureux's extramarital trysts with the teenage babysitter of his three young children. After L'Heureux's relationship with the young girl ended, Faria began dating her, a fact that appears to have wounded L'Heureux's adulterous pride.

Prosecutor Joshua Wall[4] at the remand hearing testified that he had relied on the representations made by certain prosecution witnesses that L'Heureux had blamed Faria for the vandalism of his home on November 10, 1989, and that he was not satisfied with the response of the Rehoboth police department to his complaints, and was going to take care of the matter himself. Prosecutor Wall also testified at the remand hearing that during the trial he knew that L'Heureux allegedly had reported the vandalism incident to police, but at that point Wall had not had any contact with the Rehoboth police department or seen the police report. It was not until defense counsel William A. Dimitri, Jr.,[5] who represented L'Heureux at his jury trial, cross-examined the state's seventh witness, Pawtucket Police Lt. Thomas Harris, that reference to the Rehoboth police report surfaced at the trial. At that point, Prosecutor Wall first became aware

---

4. Mr. Wall is currently an assistant district attorney and chief of the Child Abuse Unit in Suffolk County, Massachusetts.

5. Mr. Dimitri currently is a Rhode Island Superior Court Justice.

of the whereabouts of the Rehoboth police report. He recounted in his testimony at the remand hearing that at the next court break that same day he and Attorney Dimitri went through Lt. Harris's file and when the Rehoboth police report was not found, the Rehoboth police department immediately was contacted and was asked to bring as quickly as possible all materials relating to the L'Heureux case to the Providence County Superior Court. Sgt. Peter Withers of the Rehoboth police department delivered the L'Heureux materials, including the subject police report that day, and it was turned over to Attorney Dimitri. The trial justice, who also presided at the remand hearing, also recalled that the trial essentially had been interrupted until the Rehoboth police report was delivered. Prosecutor Wall's and Sgt. Withers's testimony at the remand hearing, and indeed the trial transcript itself, indicate that the questioned police report had been given to defense counsel before L'Heureux testified. On direct examination of L'Heureux, Attorney Dimitri in fact had elicited from him the details of what L'Heureux had reported to the Rehoboth police concerning the vandalism, which mirrored the exact details found in the police report. Prosecutor Wall also testified at the remand hearing that during his cross-examination of L'Heureux, he questioned him about the information contained in the police report while holding the report in plain view of L'Heureux. It is inconceivable to imagine that L'Heureux never discussed with his trial counsel his belief that it was Faria who had vandalized his home, and that he had complained to the Rehoboth police about Faria.

We are not persuaded that the hearing justice was clearly wrong in determining that the material relating to the Rehoboth police report had been provided to L'Heu-

reux as per his requests as soon as its presence became known to the prosecution. This Court stated in its remand order that if the hearing justice determined that the police report had been timely furnished to defense counsel, "then the constitutional argument pursuant to *Brady* or the argument respecting Rule 16 would be conclusively rebutted." *L'Heureux*, 683 A.2d at 375.

■ We additionally observe that even if L'Heureux's suppression claim was not so obviously manufactured, he still would not be entitled to a new trial on the grounds of newly discovered evidence, namely the Rehoboth police report. It was he who had filed the report, and all the related events contained in the report were particularly within his knowledge. "[E]vidence is not regarded as 'suppressed' * * * when the defendant has access to the evidence before trial by the exercise of reasonable diligence." *Cronan ex rel. State v. Cronan*, 774 A.2d 866, 881 (R.I.2001) (quoting *United States v. Earnest*, 129 F.3d 906, 910 (7th Cir.1997)). Here, because L'Heureux not only knew of the report, but in fact was the very source of the information contained in the report, it was not newly discovered evidence after trial and was not suppressed evidence under *Brady*.

" 'When a motion for a new trial is based on newly discovered evidence, that evidence must satisfy a two-pronged test.' * * * The first part is a four-prong inquiry that requires that the evidence be (1) newly discovered since trial, (2) not discoverable prior to trial with the exercise of due diligence, (3) not merely cumulative or impeaching but rather material to the issue upon which it is admissible, (4) of the type which would probably change the verdict at trial.

* * * Once this first prong is satisfied, the second prong calls for the hearing justice to determine if the evidence presented is 'credible enough to warrant a new trial.' * * * [T]his court will not disturb the decision of a trial justice on a motion for a new trial unless he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *State v. Gomes,* 690 A.2d 310, 321 (R.I.1997) (quoting *State v. Hernandez,* 641 A.2d 62, 72 (R.I.1994)).

We believe it is clear from the record that the hearing justice complied with the applicable standard employed when ruling on a motion for a new trial based on newly discovered evidence. She aptly summarized L'Heureux's motion by saying:

"With reference to the defendant's claim that his so-called exculpatory evidence was not disclosed or provided by the State, the defendant completely ignores the fact that this material was generated by him. It was he who called the police, he who gave the reports, he who knew of their existence, he who had not only equal access to procuring them but superior knowledge of what they contained. It is inconceivable to the court that the presentation of these documentations and photographs would have any bearing whatsoever on the outcome of this case."

The record clearly supports the hearing justice's ruling denying L'Heureux's motion for a new trial on the grounds of newly discovered evidence, and we find no reason to disturb her ruling.

## II. Allegedly Perjured Testimony

■ "It is axiomatic that 'this [C]ourt will not consider an issue raised for the first time on appeal that was not properly presented before the trial court.' " *State v. Oliveira,* 774 A.2d 893, 924 (R.I.2001) (quoting *State v. Breen,* 767 A.2d 50, 57 (R.I.2001)). L'Heureux is not permitted to raise here for the first time his baseless claim that Prosecutor Wall knowingly used perjured testimony in his closing statement to the jury in violation of L'Heureux's due process rights.[6]

■ Even if L'Heureux's contention was not waived for purposes of this appeal, and was properly raised here, his argument in support of his contention lacks merit. L'Heureux attacks the testimony of state's witness Patricia Bergeron, who testified on direct examination that she was with Faria inside Faria's father's home from the late afternoon until around midnight on Friday, November 10, 1989, and that there was a party there that night. L'Heureux argues that the November 10 Rehoboth police report proves that Bergeron committed perjury because the report shows that an officer drove by the Attleboro home several times that night and did not see in the driveway the truck that L'Heureux told the Rehoboth police Faria drove. However, Faria lived with his father, and Faria's girlfriend testified that the truck in question belonged to Faria's father. It is entirely reasonable to assume that the truck was not in the driveway because Faria's father was using it that evening, not because Faria was out of the house.

■ The police report merely contained information about L'Heureux's claim that Faria had vandalized his

6. We note that even if this issue were raised below, it would only constitute impeachment on a collateral matter. "[W]e have consistently held that '[a] witness may not be impeached on collateral matters by the introduction of extrinsic evidence.' " *McBurney Law Services, Inc. v. Apex, Inc.,* 771 A.2d 911, 912 (R.I.2001) (mem.); *see also* R.I.R.Evid. 608.

home. Nothing in the report supports L'Heureux's contentions that Bergeron committed perjury or that the prosecutor knowingly used perjured testimony in his closing argument to the jury, and to which defense counsel failed to object. Indeed, the prosecutor invited the jury "to assume that everything [L'Heureux] said is true, * * * is that any justification for killing someone, someone who has a five-dollar bill in one hand and the other hand up against the body surprised by the shot, they didn't even see it was coming?" L'Heureux was not justified under any theory of self-defense in shooting Faria to death because he believed that Faria had vandalized his home.[7]

We are satisfied that the trial record fails to support L'Heureux's contention that the prosecutor at his trial knowingly used perjured testimony in his closing argument. That contention utterly lacks merit and is immaterial because L'Heureux had no justification as a matter of law for shooting and killing Faria for the alleged earlier vandalism of his home.

### III. Disclosure of Photographs

■ In his previous appeal to this Court, L'Heureux did not argue, as he does now, that the state violated his constitutional right to due process by failing to disclose photographs that the Rehoboth police took of the tire tracks on L'Heureux's lawn when they responded to the vandalism of his home on November 10, 1989. L'Heureux asserts that these photographs were given to the Pawtucket police department before trial and that the Paw-

tucket police department, with the actual or imputed knowledge of the prosecution, then kept the photographs from defense counsel because the photographs would have established that Faria's vehicle was the source of the tire tracks. Assuming that to be true, namely that Faria's father's truck's tires matched the tire marks on L'Heureux's lawn, would that justify his cold-blooded shooting and killing of Faria?

L'Heureux obviously cites to no authority to support his due process contention about the photographs because none exists.

### IV. Denial of Motion for New Trial on "Interest of Justice" Grounds

L'Heureux also contends here that the hearing justice should have granted his "interest of justice" motion for a new trial or resentenced him at the conclusion of the remand hearing. This assertion is based on nothing more than the arguments previously addressed in this opinion. The hearing justice rejected those arguments and quite aptly noted that:

"The court does not find in any way that this verdict is inconsistent with the law or the evidence or the testimony or the credible evidence or my instructions. The only way this verdict does not do substantial justice is it is a verdict of manslaughter instead of murder in the first degree. And so your motion for new trial is denied, and you have an objection."

The hearing justice did not err in denying L'Heureux's "interest of justice" mo-

---

7. *See, e.g., State v. Hanes,* 783 A.2d 920, 925–26 (R.I.2001) ("defendant must have a reasonable fear of 'imminent death or serious bodily injury' and must respond reasonably in

proportion to that threat, retreating if it is reasonably safe to do so"); *State v. Ordway,* 619 A.2d 819, 824 (R.I.1992).

tion for a new trial or in refusing to reduce L'Heureux's sentence.

### V. Issues Raised in *Pro Se* Brief

■ In his *pro se* supplemental brief, L'Heureux attempts not only to revisit issues that were adequately covered in his public defender's appellate brief but also novel meritless issues obviously concocted by him that require but scant reference. For example, L'Heureux takes issue with the fact that the state did not challenge his suppression charge at the 1994 hearing on his motion for a new trial based on the state's assertion that L'Heureux himself generated the report, then later argued at the remand hearing that the prosecutor did turn over the report to defense counsel. L'Heureux points to our raise or waive rule, which is totally inapposite here. As we noted in our remand order, "any information that might sustain the decision of the trial court is admissible at the appellate level." *L'Heureux*, 683 A.2d at 375. The state's assertion at the remand hearing that the trial prosecutor did turn over the police report to defense counsel was entirely proper.

L'Heureux's additional *pro se* contention that the hearing justice improperly denied his motion to compel discovery lacks merit because the purpose of the remand hearing was only to determine if the prosecution turned over specific information concerning the November 10, 1989 Rehoboth police report to the defense. The hearing justice aptly explained that "[a] motion to compel inferentially suggests that there was a previous discovery request that was not complied with. There is no evidence of any such event in this case * * *."

Finally, L'Heureux makes no credible showing that the state is responsible for the time it has taken to resolve the factual issues in this case. To ascertain the source of this delay, he need look no further than his own reflection and the endless barrage of motions with which he has pelted this Court. This issue does not merit any further consideration by this Court.

### Conclusion

For the reasons above stated, L'Heureux's appeals are denied and dismissed. His judgment of conviction for manslaughter entered in the Superior Court is affirmed, and his appeal from the decision of the trial justice following a partial remand hearing is denied and dismissed. The papers in this case are remanded to the Superior Court.