DECISION
The matter before the Court is an Application for Post-Conviction Relief filed by Applicant Evangelina Lisa Burgess ("Burgess"). Jurisdiction is pursuant to chapter 9.1 of title 10 of the Rhode Island General Laws.
 I Facts and Travel
A fire occurred at 46 Senator Street in the City of Warwick on November 4, 1996. At the time of the fire, Burgess and other individuals were present at the home. Included among those individuals was one Carolyn Stark ("Stark"), who was a friend and former neighbor of Burgess. Officials concluded that the cause of the fire was deliberate, and charged Burgess with first-degree arson. As part of a negotiated plea agreement, Burgess pleadednolo contendere to a reduced charge of second-degree arson. On March 2, 1998, a Superior Court Justice accepted the plea, and Burgess was sentenced to a seven-year term of imprisonment that was suspended with seven years of probation. Burgess has completed the sentence imposed.
In accepting the plea, it appears that the hearing justice followed well-accepted procedures under Rule 11 of the Superior Court Rules of Criminal Procedure.[1] Those *Page 2 
procedures, inter alia, are designed to ensure that a criminal defendant enters his/her plea voluntarily, with full knowledge of the nature and consequences of the plea (including the waiver of certain constitutional rights), and to ensure that the defendant acknowledges the facts as recited by the prosecutor sufficient to support the charge, or charges, to which the plea relates. Accordingly, as part of the Rule 11 process, a criminal defendant signs a "Request to Enter Plea" form after having had an opportunity to read its contents and consult with counsel.[2]
In the instant matter, Burgess changed her plea from not guilty to the first-degree arson charge, to a plea of nolo contendere on a reduced charge of second-degree arson. Before changing her plea, Burgess signed a "Request to Enter Plea" form after reading and reviewing its contents with counsel. Her attorney also signed the form. By signing the form, Burgess agreed that "I will be admitting sufficient facts to substantiate the charge brought against me in the case to which the plea relates." Pursuant to Rule 11, Burgess also appeared before an Associate Justice of the Superior Court in connection with the proposed plea agreement.
At the conclusion of this appearance, the hearing justice signed the form, certifying that he was satisfied: (1) with the prosecutor's statement of facts; (2) with the defendant's acknowledgement of those facts; (3) that there was a factual basis for the plea; and, (4) that the defendant entered the plea voluntarily, intelligently, and with knowledge and understanding of all matters set forth in the plea form. See
note 2, supra. *Page 3 
Now, some thirteen years after the plea, Burgess has filed this Application for Post-Conviction Relief in accordance with § 10-9.1-1, asking the Court to vacate the conviction resulting from her voluntary plea on two grounds: (1) "that there exists evidence of material facts, not previously presented or heard, that require vacation of the conviction or sentence, in the interests of justice" ("newly discovered evidence"); and (2) that she was provided ineffective assistance of counsel.
Additional facts will be provided in the Analysis portion of this Decision.
 II Standard of Review
In Rhode Island, "post-conviction relief is available to a defendant convicted of a crime who contends that his [or her] original conviction or sentence violated rights that the state or federal constitutions secured to him [or her]." State v.Laurence, 18 A.3d 512, 521 (R.I. 2011) (quoting Otero v.State, 996 A.2d 667, 670 (R.I. 2010)). Section 10-9.1-1(a) establishes a statutory right to post-conviction relief. It provides:
 "(a) Any person who has been convicted of, or sentenced for, a crime, a violation of law, or a violation of probationary or deferred sentence status and who claims:
 (1) That the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state;
 (2) That the court was without jurisdiction to impose sentence;
 (3) That the sentence exceeds the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;
 (4) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
 (5) That his or her sentence has expired, his or her probation, parole, or conditional release unlawfully revoked, or he or she is otherwise unlawfully held in custody or other restraint; or *Page 4 
 (6) That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy; may institute, without paying a filing fee, a proceeding under this chapter to secure relief." Section 10-9.1-1(a).
Post-conviction relief applications are "civil in nature."Ferrell v. A.T. Wall 889 A.2d 177, 184 (R.I. 2005) (quotingOuimette v. Moran, 541 A.2d 855, 856 (R.I. 1988)). As such, "[a]ll rules and statutes applicable in civil proceedings shall apply." Ferrell 889 A.2d at 184.
 III Analysis A. Newly Discovered Evidence
In her application for post-conviction relief, Burgess asserts that her conviction and/or sentence should be vacated because there exists newly discovered material evidence that was not available to her when she entered her plea. This alleged newly discovered evidence consists of two unattested statements, one of which was written and signed and the other recorded, that Stark made to Burgess. In those purported statements, Stark admitted that it was she who set the fire which resulted in Burgess being charged with arson.
At the hearing, Burgess offered the handwritten note that she had written, and that Stark had signed, into evidence as Exhibit 1, and the transcript of a tape recorded conversation as Exhibit 2. The documents were marked for identification; however, the State objected to their admissibility as full exhibits on the basis that the documents contained inadmissible hearsay. Counsel for Burgess urged the Court to accept the documents as full exhibits under the Rule 804(b) hearsay exception for statements against penal interest. The Court sustained the State's objections, finding that the written confession and the transcript did not meet the criteria for the *Page 5 
hearsay exception, in that both lacked corroborating circumstances clearly indicating the trustworthiness of the out-of-court statements. See R.I. R. Evid. 804(b)(3).
To prevail on an application for post-conviction relief, an applicant has "the burden of proving, by a preponderance of the evidence, that such relief is warranted . . ." Mattatall v.State, 947 A.2d 896, 901 n. 7 (R.I. 2008) (internal citations omitted). Furthermore, in considering an application for post-conviction relief based upon a claim of newly discovered evidence, "the hearing justice utilizes the same standard used for considering a motion for a new trial due to newly discovered evidence." Reise v. State,913 A.2d 1052, 1056 (R.I. 2007). Said standard consists of a two-part test. Id. (citing Bleau v. Wall808 A.2d 637, 642 (R.I. 2002)); see also Ferrell889 A.2d at 184 ("The trial court applies a two-pronged test to determine whether to grant post-conviction relief based upon newly discovered evidence . . . [including situations where] the purported new evidence is a recantation by a material witness.").
The first, or threshold, part of this test requires an applicant to prove that
 "(a) the evidence is newly discovered or available only since trial; (b) the evidence was not discoverable prior to trial despite the exercise of due diligence; (c) the evidence is not merely cumulative or impeaching but rather is material to the issue upon which it is admissible; and (d) the evidence is of a kind which would probably change the verdict at trial." Reise, 913 A.2d at 1056.
See also State v. Hazard, 797 A.2d 448, 463-64 (R.I. 2002);State v. L'Heureux, 787 A.2d 1202, 1207-08 (R.I. 2002);Brennan v. Vose, 764 A.2d 168, 173 (R.I. 2001); State v.Gomes, 690 A.2d 310, 321 (R.I. 1997); McMaugh v. State,612 A.2d 725, 731-32 (R.I. 1992).
It is only after the Court determines that an applicant has satisfied the "threshold inquiry," that the Court is required to consider the second prong, which allows the justice to exercise his/her independent judgment as to the reliability of the evidence presented as "newly *Page 6 
discovered." See Reise, 913 A.2d at 1056 ("If the threshold test has been satisfied, the hearing justice must then determine, in his or her discretion, whether or not the newly discovered evidence is sufficiently credible to warrant relief"); Ferrell889 A.2d at 184 (requiring the trial justice to "determine whether the evidence presented is credible enough to warrant relief, a determination made by his [or her] accepting or rejecting conflicting testimony by exercising his or her `independent judgment'"). Generally, an evidentiary hearing is required to make any such reliability/credibility determination. See Reise,913 A.2d at 1056.
Burgess asserts that the facts underpinning her claim of newly discovered evidence stem from an encounter with Stark that occurred on or about March 12, 2000 — some two years after the entry of her plea and over three years after the fire. Stark, who was with Burgess at the time that the fire began, allegedly told Burgess that she, Stark, was the one who actually lit the fire which formed the basis of the arson charge against Burgess. Burgess claims that thereafter she wrote out the confession and presented it to Stark, and that Stark allegedly signed the unsworn document in Burgess's presence. At the hearing, Stark testified that at the time she signed the document, she was unable to read. After answering some preliminary questions, the Court recessed the hearing to allow Stark to speak with her counsel. When the hearing recommenced, Stark invoked her right against self-incrimination under theFifth Amendment as to all subsequent questions with respect to her out-of-court confessions.
The second alleged piece of newly discovered evidence consisted of a transcript from a recorded conversation that was made over six years after the fire. In that conversation, Stark again stated that it was she who set the fire. Burgess testified that on or about February 2003, she arranged to meet in Stark's parked automobile near the methadone treatment center that both she and Stark attended. Although Burgess brought a recorder to this encounter, Stark was *Page 7 
unaware that the conversation was being recorded. Burgess' brother, Peter Metko ("Metko"), testified that he too participated in the same conversation with Stark and his sister. He testified that although he was aware the conversation was being recorded, Stark was unaware of that fact. In the recorded conversation Stark stated again that she, not Burgess, set the fire for which Burgess was charged.
A transcript of the recorded conversation was offered into evidence at the hearing and marked as Applicant's Exihibit 2 for identification. When counsel for Burgess moved to have Exhibits 1 and 2 marked as full, the State objected on hearsay grounds.
The first issue for the Court to address was whether the two statements that Burgess submitted meet the threshold test for newly discovered evidence for purposes of granting post-conviction relief under the four-part analysis set forth above. Seesupra at 5. The Court believes the threshold test was satisfied in this case.
First, Burgess established that the proffered evidence was not available at the time of her plea since both statements were made by Stark several years after the plea. Second, there was no evidence in the record to suggest that Stark would have been willing to come forward to make those statements any earlier than she did so; consequently, it was not discoverable even in the exercise of due diligence. As to the third factor, it was clear that the statements would have been material to the guilt or innocence of Burgess. Finally, had the case gone to trial, the statements, if admitted, likely would have affected the outcome of any such trial. After the Court concluded that Burgess met the threshold test for considering the proffered statements as newly discovered evidence, the Court then exercised its independent consideration of the reliability of those statements. *Page 8 
The State objected to the admission of both exhibits, asserting that they constituted inadmissible hearsay. Burgess' counsel countered that the documents, although containing hearsay statements, nonetheless were admissible under the exception to the hearsay rule for statements against interest Rule 804(b)(3) of the Superior Court Rules of Evidence. The Court sustained the State's objections, finding that the evidence lacked corroborating circumstances to support a finding that Stark's out-of-court statements were trustworthy.
Rule 804(b)(3) of the Rhode Island Rules of Evidence provides: "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." R.I. R. Evid. 804(b)(3). Under the Rule,
 "three considerations must be taken into account to determine the trustworthiness of declarations made against one's penal interest: first, the timing of the declaration and the party to whom the declaration was made; second, the existence of corroborating evidence; and third, the extent to which the statement is truly against the declarant's penal interest." State v. Firth, 708 A.2d 526, 531 (R.I. 1998).
Furthermore, "[t]he last sentence of th[is] exception is designed to guard against fabrication when the statement is offered to exculpate the accused." Advisory Committee Notes to Rule 804(b)(3). Indeed, "corroborating circumstances are a prerequisite to admissibility."Id.
In Ferrell v. A.T. Wall, our Supreme Court had occasion to address the admissibility of an unsworn, out-of-court, video-taped recantation of an eyewitness's trial testimony at a hearing on an application for post-conviction relief. See Ferrell,889 A.2d 177. The applicant in that case asserted that the recantation, which occurred after he was convicted but before he was sentenced, constituted newly-discovered evidence for purposes of warranting relief under the post-conviction relief statute. When the witness took the stand at the hearing, he invoked his *Page 9 Fifth Amendment privilege against self-incrimination on all questions in order to avoid possible prosecution on a charge of perjury. The hearing justice admitted the video-taped recantation and, thereafter, granted the application for post-conviction relief.
In reversing the decision, the Supreme Court observed that "Courts properly view recanting affidavits and testimony with great suspicion[,] . . . [because] [s]worn recantations upset society's interest in the finality of convictions, and are very often unreliable and given for suspect motives * * *."Ferrell 889 A.2d at 184 (quoting Dobbert v. Wainwright468 U.S. 1231, 1233-34 (1984) (internal quotations omitted). The Court further declared that "[w]hile all recantations are viewed with some degree of skepticism, unsworn recantations deserve increased suspicion." Ferrell 889 A.2d at 184. The Court then explained that "[a] sworn affidavit at least carries with it certain inherent indicia of reliability . . . [because it contains statements] regarded as truthful and the document is therefore available as evidence of the facts stated." Id. Conversely, "unsworn, out-of-court recantations] must be viewed with a markedly heightened mistrust" and are inherently unreliable because they are "not made under oath or in court [and] do not constitute [an] adequate bas[i]s to support post-conviction relief."Id. at 184-85.
The Supreme Court then stated that "the most compelling panacea for the questionable reliability of any witness statement is cross-examination. Cross-examination has been described as the greatest legal engine ever invented for the discovery of truth."Id. at 185 (internal quotations omitted). Furthermore,
 "Given the greatly increased skepticism with which a court must view an unsworn, out-of-court recantation, coupled with society's strong interest in the finality of convictions, assessments based upon amorphous notions of reliability, or credibility, absent cross-examination, are intrinsically suspect." Id. at 185-86 (internal quotations omitted). *Page 10 
The Court then recognized the particular value of cross-examination in situations where "a recantation is presented as newly discovered evidence in a post-conviction relief proceeding."Id at 186. It specifically stated that
 "At such an evidentiary hearing the trial justice may consider the proposed recanted accusation of the complaining witnesses and may assess the credibility thereof. The trial justice may further weigh the credibility of these statements in light of the defendant's admissions in open court or by affidavit of the factual basis for his plea. We do not believe that this process may be carried out without taking the testimony of witnesses at an evidentiary hearing." Id (Emphasis in original.)
The Supreme Court acknowledged that a hearing justice is required to view the totality of the evidence in making a credibility determination, however, "the threshold requirement [is] that a sustainable credibility determination is conditioned uponcompetent evidence, regardless of the necessity to view it in its entirety." Id at 188. Accordingly, the Court reversed the decision, holding that there was "insufficient evidence to properly determine the credibility of [the] recantation [where] [t]he statement was videotaped out of court, and was not given under oath[,] [and that although the witness] could have cured these difficulties by testifying at defendant's post-conviction relief hearing; instead, he chose to plead the Fifth Amendment."Id
In the instant matter, the Court was not faced with a recantation; rather, Burgess produced evidence of an alleged confession made over two years after her conviction and sentence for arson. However, the same reasoning concerning determination of the reliability of the unsworn statements in this case would apply with similar force in light of the admissions made by Burgess in open court concerning the factual basis for her plea. See Ferrell 889 A.2d at 186.
The Court found the "confession" written by Burgess, but signed by Stark, did not have sufficient independent corroborating factors of reliability or trustworthiness, and sustained the State's objection to its admissibility under Rule 804(b)(3) of the Superior Court Rules of *Page 11 
Evidence. Specifically, the Court found the written statement to be untrustworthy because it was not a statement attested to under oath and its contents could not be subjected to cross-examination due to Stark's invocation of her rights under theFifth Amendment. Furthermore, the statement was drafted solely by Burgess, and signed by Stark, notwithstanding Stark's testimony that she was unable to read.
Likewise, the Court found the recorded statement to be untrustworthy because it was not a statement attested to under oath and could not be explored by the State because Stark had invoked herFifth Amendment rights as to its contents. Furthermore, both statements lacked independent corroborating circumstances which might have rendered the statements admissible hearsay as statements against interest. Indeed, the circumstances surrounding the statements suggested that they actually were unreliable hearsay statements.
For instance, there was presented no physical evidence tending to inculpate Stark, and exculpate Burgess, nor was there presented any statements by others who were present at the time of the fire. Neither the recorded statement, nor the written statement, was given under oath and neither was subject to the truth-finding process of cross-examination. Both statements were made a substantial period of time after the fire and Burgess's conviction following entry of hernolo contendere plea (the fire was November 4, 1996 and the plea was entered on March 2, 1998, whereas the written statement was signed on March 12, 2000, and the recorded statement given in February 2003).
Although Stark was not aware that her February 2003 conversation was being recorded, that fact alone is insufficient to overcome the substantial contextual circumstances pointing to the unreliability of the statement. Indeed, as to the recording, significant factors point to the untrustworthiness of the statement. Not only was it significantly remote from the date of the fire, *Page 12 
there are, in the Court's view, other factors that would render untrustworthy the recorded statement.
For instance, at the time the statement was recorded, Stark sat alone in the driver's seat, while Burgess and her brother sat behind her in the rear seat. It is conceivable that Stark could have been intimidated by Metko's presence to the extent that her incriminating statement may not have been entirely spontaneous or voluntary. In fact, at one point during the conversation, Burgess suggested to Stark that her brother was present because he didn't believe Burgess when she told him of Stark's earlier confession. In view of the Court's finding that the statements were untrustworthy, coupled with the finding that neither one was subject to cross-examination or corroborated by other evidence, the Court concluded that neither of the hearsay statements offered as evidence at the hearing were admissible under the exception to the hearsay rule for statements against interest Rule 804(b)(3) of the Superior Court Rules of Evidence.
In addition, the Court is cognizant of the fact that it should view with suspicion out-of-court statements made at a remote time and not under oath or subject to cross-examination because they are presumptively inadmissible due to the inherent untrustworthiness of such statements and undermine the goal of fostering the finality of convictions. See Ferrell, 889 A.2d at 184. Burgess has failed to overcome that presumption of unreliability of the statements by showing corroborating circumstances that clearly indicate the trustworthiness of Stark's hearsay statements.
In light of the foregoing, the Court did not believe that either statement was sufficiently reliable to be admissible under Rules of Evidence Rule 804(b)(3). Consequently, the statements cannot be considered newly discovered competent evidence justifying the post-conviction relief sought under § 10-9.1-1. *Page 13 
Even if the offered statements were not determined to be inadmissible hearsay, the untrustworthiness of the statements would not support the Court vacating Burgess' conviction. While this Court is not unmindful of the potential miscarriage of justice in circumstances where the wrong person is charged and convicted of a crime to which another person has confessed, and although the knee-jerk reaction might be to vacate the conviction in the interest of justice, a court must proceed cautiously, before jumping to the conclusion that the wrong person was convicted. The reason is that "when a person comes forward with an eleventh-hour confession that exculpates the defendant long after he or she has had several opportunities to do so . . ., such circumstances demonstrate the unreliability of the testimonial evidence." Brennan,764 A.2d 174. Furthermore, considering that Starks' statements were given over two years and five years after Burgess was convicted, respectively, they lack reliability. See Firth,708 A.2d at 531 (observing that "a statement relating back to an incident that took place nearly three and one-half years earlier lacks the type of reliability normally associated with hearsay exceptions").
For all of these above-stated reasons, the Court does not believe that Burgess has carried her burden of overcoming the strong presumption against the credibility of the Stark confessions. Consequently, she has not convinced the Court that her conviction should be vacated on the basis of that inadmissible evidence.
 B. Other Grounds for Post-Conviction Relief
Although several other grounds were alleged in the Petition, the only ground pressed by Burgess at the hearing, or in post-hearing memoranda, was based upon the newly discovered *Page 14 
evidence.[3] Accordingly, the Court deems the other grounds alleged in the Application to have been waived, and the Court need not address any additional grounds in this decision.[4]
 V Conclusion
For the reasons set forth herein, the Application for Post-Conviction Relief is denied. Counsel shall submit an appropriate judgment for entry.
[1] Rule 11 of the Superior Court Rules of Criminal Procedure provides:
 "A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea." Super R. Civ. P. Rule 11.
[2] While the State did not introduce the transcript of the plea colloquy, the Court takes judicial notice that the Request to Enter Plea form signed by Burgess, her lawyer, and the hearing Justice, was made part of the criminal case file in K1-1997-0055A.
[3] The State raised the defense of laches due to the fact that the Application for Post-Conviction Relief was filed some twelve years after the Burgess plea; however, because the Court finds no merit to the Application, and has denied relief on other grounds, the Court need not address this defense.
[4] With respect to the allegation of ineffective assistance of counsel, considering that the newly discovered evidence was not available to the attorney that she engaged at the time she entered her plea, it is unclear how that there now could be a legitimate claim for ineffective assistance of counsel concerning that not-yet discovered evidence. Indeed, Burgess' counsel essentially conceded this point when she admitted that the ineffective assistance of counsel claim merely was "boilerplate" language that she had added to the Application for Post Conviction Relief.

 *Page 1