399 A.2d 1217.

STATE *vs.* CHARLES FREITAS.

MARCH 30, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.   On September 29, 1977, a Superior Court jury found the defendant, Charles Freitas, a 52-year-old man, guilty of committing abominable and detestable crimes against nature with a 9-year-old boy. G.L. 1956 (1969 Reenactment) §11-10-1. From the entry of a judgment of conviction, the defendant appeals.

The record discloses that defendant lived on the first floor of a two-family house in Providence, near the family business operated by the victim's parents. The victim knew defendant as a neighborhood man called "Charlie." The victim testified that on August 1, 1975, defendant invited him to his apartment and showed him assorted pictures of naked people. During this visit, the boy drank small quantities of wine and beer given to him by defendant.

The victim further testified that four days later, on August 5, 1975, at about 5 p.m., defendant again invited him to his apartment. On this occasion, defendant undressed both himself and the victim and committed the acts for which he was convicted. The defendant then gave the victim 50 cents and the boy left. The victim took the money to a local store and bought candy with it. Shortly thereafter, he met his mother, who, after discovering that "Charlie" had given her son money, brought the boy back to defendant's home to return the money. She testified that they were met at the front door by one Robert Thompson (Thompson), the owner of the building and the second-floor resident. She told the court that after Thompson opened the door, he stepped out onto the front step and closed the door behind him. Just before the door shut, however, she stated that she glanced inside and saw a man, whom she identified as defendant, arising from a chair. She explained that after she handed Thompson 50 cents to reimburse defendant, she and her son departed. On their way home, the boy revealed to her what had happened earlier in defendant's apartment.

At trial, defendant proffered a defense of alibi. In support of this defense, Thompson, the landlord and longtime friend of defendant, testified that defendant was not home at the time of the alleged crime. During cross-examination by the prosecutor, the following exchange occurred:

"Q Did you talk to Mr. Almeida [defense counsel] this morning in the hall?
A Uh-huh.
Q You were talking about this case?
A Uh-huh.
Q In response to a question from Mr. Almeida, did you say, 'I don't remember'?
A Don't remember what?
Q This case.
A I said I don't remember the case?
Q What happened that day.
A What day?
Q August 5th, 1975.

A  I said to him that I don't remember what happened that day?

Q  I'm asking you did you say that to him?

A  No.

Q  Did he say to you, 'Look, just do me a favor and say that Charlie wasn't home between three-thirty and five'?

MR. ALMEIDA: I object, your Honor.

THE COURT: Take the jury out."

In the absense of the jury, the trial justice conducted a voir dire of Thompson and conferred with both counsel. At this time the prosecutor assured the court that the state would produce a witness who would testify to the alleged colloquy between Thompson and the defense attorney. Relying on that assurance, the court overruled defendant's objection and allowed the challenged question, as part of a foundation to introduce a prior inconsistent statement. When the jury was returned, the prosecutor's question was repeated and, at this time, Thompson emphatically denied the alleged dialogue with defense counsel.

The prosecutor then called the victim's mother as a rebuttal witness. When asked whether she had overheard any conversation in the courthouse hallway, she testified that:

> "[A]s I was approaching up the hallway from this way (Indicating), Mr. Freitas' back was to me, Mr. Almeida's back was to me, and Mr. Thompson was facing me coming down the hall, and as I started to approach I could see Mr. Thompson going 'I don't know. I don't remember.' As I passed them, I heard Mr. Almeida 'Just say Charlie was not home between three thirty and five o'clock.' "

Following her testimony and a conference at the bench, defense counsel took the witness stand and categorically denied the reputed colloquy with Thompson.

The substance of defendant's first argument on appeal is

that the prosecutor's examination of Thompson, which alleged in leading question format that defense counsel had suborned Thompson to commit perjury, injected an incurable element of prejudice into the case. He contends that the trial justice erred in refusing to declare a mistrial after this topic was broached before the jury. We cannot agree. In the first place, the question itself was not evidence. Nor do we think that the very utterance of the question in the presence of the jury necessarily created prejudice sufficient to deprive defendant of a fair trial. *See State* v. *Howard,* 114 R.I. 731, 737-38, 339 A.2d 259, 263 (1975). The trial justice, before allowing Thompson to answer, carefully instructed the jury that Thompson's testimony was only admitted for the purpose of establishing a foundation for the introduction of a prior inconsistent statement. We have said on many occasions that deciding whether to declare a mistrial is a discretionary function of the trial court. *Id.* at 738, 339 A.2d at 263; *State* v. *Marrapese,* 116 R.I. 1, 7, 351 A.2d 95, 98 (1976). The trial justice has a ringside perspective of the trial, which we do not. Thus, he or she is better able to assess the degree of prejudice and the effectiveness of curative judicial instructions. We perceive no abuse of this discretion in the present case; we are therefore not inclined to tamper with the lower court's ruling.

The defendant next argues that the testimony of the victim's mother, similarly suggesting that defense counsel had suborned perjury, impaired the effectiveness of his trial counsel. Moreover, he contends that his defense counsel improperly split his allegiance between his own defense and the defense of his client when he took the stand to refute the allegations of wrongdoing. As a result, defendant avers, he was thereafter denied the effective assistance of counsel mandated by the sixth amendment to the Federal Constitution.

In our considered opinion, however, this issue is not properly before us. We have recently held in *State* v. *Levitt,* 118 R.I. 32, 371 A.2d 596 (1977), that the correct procedure

for raising a sixth amendment challenge to the competency of counsel is through the provisions of our Post Conviction Remedy Act. G.L. 1956 (1969 Reenactment) §§10-9.1-4 to 9 (Supp. 1978). We explained in *Levitt* that, absent a challenge to a specific ruling of a trial court, there is nothing for us to review on direct appeal. *Id.* at 40, 371 A.2d at 600; *State* v. *Buckley,* 104 R.I. 317, 322-23, 244 A.2d 254, 257-58 (1968); *State* v. *Quattrocchi,* 103 R.I. 115, 117-18, 235 A.2d 99, 101 (1967). In the instant appeal, defendant does not challenge any specific ruling of the trial court. The testimony impugning defense counsel by the victim's mother, which testimony is now attacked on appeal as a basis for defendant's sixth-amendment challenge, was not objected to at trial and thus was not passed on by the trial court. Similarly, defendant's other allegation concerning incompetency of counsel relates to defense counsel's trial tactics rather than to an action or ruling of the trial court. Therefore, in accordance with our holding in *Levitt,* we must decline to reach the merits of defendant's arguments when they are presented on direct appeal in this posture.

The defendant raises two further issues in his brief. They concern allegedly unfair remarks made by the prosecutor during summation and allegedly erroneous jury instructions given by the trial justice on the defense of alibi. We aggregate these arguments because, in each instance, defense counsel failed to object at trial to the actions now complained of. Moreover, our review of the record does not disclose any special circumstances, such as clear error, that would warrant us to consider these arguments sua sponte. Consequently, our usual waiver rule is applicable, and the defendant is foreclosed from raising these issues for the first time on appeal. *See State* v. *Marrapese,* 116 R.I. at 12, 351 A.2d at 100; *State* v. *Ruggiero,* 93 R.I. 241, 247, 174 A.2d 555, 558 (1961).

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.

*Dennis J. Roberts II*, Attorney General, *Nancy Marks Rahmes*, Special Assistant Attorney General, for plaintiff.

*Ira L. Schreiber*, for defendant.