**STATE**

v.

**Mark THOMAS.**

**No. 93–647–C.A.**

Supreme Court of Rhode Island.

Feb. 15, 1995.

Jeffrey Pine, Atty. Gen., Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, Asst. Public Defender, for defendant.

## OPINION

MURRAY, Justice.

This case comes before us on an appeal by the defendant Mark Thomas (defendant) from his convictions of two counts of first degree sexual assault. G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L. 1987, ch. 238, § 1, and § 11–37–3. The defendant asserts that his sentence violates his State and Federal Constitutional protections against double jeopardy and is impermissible under the literal language of § 11–37–2. He further contends that the trial justice erred in failing to sufficiently instruct the jury regarding the proper use of his prior criminal convictions. For the reasons set forth below, we affirm.

At approximately 9:30 p.m. on July 13, 1990, Charlene Gomes (Charlene), aged fifteen, accompanied by her cousin Stacey Gomes (Stacey), aged fourteen, and friend Mark Gorton (Mark) attended a beer party. The party was held in an apartment located at 40 Holden Street in Coventry and occupied by defendant and his roommate Thomas Flint. Upon arriving at the party, the three each paid defendant two dollars and in return received cups enabling them to drink from a keg of beer. Charlene testified that prior to that evening she had never had any contact with defendant.

Shortly after the three began drinking beer, both defendant and Mark proceeded to a nearby liquor store to buy a bottle of vodka approximately twelve inches in height. The two men subsequently arrived back at the party with the bottle and passed it to Charlene. Charlene testified that she drank nearly half the bottle of vodka "straight" in ten to twenty minutes. Prior to drinking the vodka, Charlene stated that she had already consumed about four cups of beer.

At some point during the party, Charlene and Stephen Gorton (Stephen), Mark's nephew, entered a bedroom and while sitting on the edge of the bed proceeded to engage in a conversation. Charlene stated that at this point she felt "kind of dizzy [and] [n]umb" as a result of her drinking. She further testified that at some point during her conversation with Stephen she had passed out. When she awoke Stephen was on top of her engaging in sexual intercourse. She immediately "tried to push him and kick at him" in an unsuccessful effort to make him stop. Moments later, defendant "grabbed Steve off" of Charlene and proceeded to have sexual intercourse with her. Charlene testified that she tried to resist but could not because a man identified from the record only as "Wolfman Jack" had grabbed one of her wrists and was holding it down on the side of the bed while defendant had pinned her other arm above her head.[1] During this entire incident Charlene stated she was unable to speak as a result of her consumption of alcohol.

At some point when defendant was having intercourse with her, Charlene testified that she heard someone yell, "Oh, shit, the cops are here." Whereupon, defendant immediately removed himself from Charlene and ushered her into another bedroom. While in the other bedroom Heather Chase (Chase), Stephen's sister, helped Charlene get dressed. Within minutes, the police entered the apartment.

As an officer attempted to open the door to the bedroom where Chase was helping Charlene get dressed, defendant approached the officer and told him "Don't open that door,

---

1. Despite police reports positively identifying the man called "Wolfman Jack," we are bound by the record below.

that's my bedroom." The officer responded, "Why don't you want me to open the door?" The defendant replied his girlfriend "Linda" was in the bedroom and that "[she] was drunk and didn't know who [she] was." Moments later Charlene told the police her correct name and that she was not defendant's girlfriend. Shortly thereafter, defendant was arrested.

Stacey testified that at one point during the party she entered a bedroom, observed Stephen and Charlene "kissing" and then left. Fifteen minutes later Stacey reentered the room and observed Stephen having sexual intercourse with Charlene. While Stephen was engaging in sexual intercourse with Charlene, defendant was trying to get Charlene to perform oral sex on him. At the same time "Wolfman Jack" was kneeling down at the side of the bed holding down one of Charlene's arms. Also present was an unidentified male who was standing at the end of the bed watching.

Upon viewing the situation, Stacey exited the room to get a wrench she had previously noticed in the hallway of the apartment. She then walked back into the room and hit Stephen, who was still having intercourse with Charlene, in the back. Whereupon, Stephen removed himself from Charlene. Stacey then proceeded over to the stereo to lower the volume of the music that was blaring so that she could tell the men in the room to stop.

While she was lowering the volume of the stereo, defendant began to engage in sexual intercourse with Charlene. Seeing what had transpired, Stacey walked over to defendant and struck him with the wrench. According to Stacey defendant got up, snatched the wrench out of her hands and stated, "You want to go around hitting people and stuff?" Feeling scared and not knowing what else to do Stacey immediately left the apartment. Seeing a house with a light on, she stopped, asked to use the phone and then proceeded to call 911.

Chase testified that she arrived at defendant's apartment at approximately 12:30 a.m. to check on her brother Stephen Gorton. Moments after entering the apartment she heard a "loud noise" coming from a girl in the rear of the apartment. After proceeding to a bedroom in the back of the apartment, Chase observed Charlene and defendant having sexual intercourse. From her vantage point, Chase recalled that Charlene was trying to push defendant off of her but defendant would not allow her to move. While this was occurring, "[Wolfman Jack] was standing on the side of the bed * * * just looking over them. Just laughing." Chase then left the room.

A short time later Chase tried to reenter the bedroom but "Wolfman Jack" prevented her. After a few minutes, Chase testified that she observed defendant pick Charlene up and "carr[y] her into the other [bed]room." While she was being carried Charlene complained that she was "going to be sick." Once in the other bedroom, Chase began to help Charlene get dressed because Charlene had trouble standing up and could barely speak. A short time later the police arrived.

The defendant largely disputed this version of events. He testified that at some point during the party Charlene had gone to the apartment next door. When she arrived back at defendant's apartment she was accompanied by Stephen. According to defendant Charlene "more or less shrugged Stephen aside * * * and proceeded to put her arms around me and French kiss me."

A short time after this incident defendant proceeded to go into the back bedroom to adjust the stereo. Upon entering the room he stated that he observed Charlene and Stephen having sexual intercourse. As he was leaving the bedroom, defendant testified that Charlene grabbed his arm pulling him towards her. At this point Stephen stopped having intercourse with Charlene. The defendant stated that he then engaged in foreplay with Charlene eventually having sexual intercourse with her. He testified that during the entire time Charlene seemed "perfectly willing" to engage in sexual intercourse never objecting to any of his actions.

On February 21, 1991, defendant was indicted by a grand jury on two counts of first degree sexual assault in violation of §§ 11–37–2 and 11–37–3. After a trial by jury,

defendant was convicted on both counts and sentenced to concurrent terms of twenty years. The defendant now appeals.

The defendant contends that the imposition of multiple sentences for one act of unlawful sexual penetration twice put him in jeopardy in violation of article 1, section 7, of the Rhode Island Constitution and the Fifth Amendment to the United States Constitution. He also asserts that the trial justice committed reversible error by improperly instructing the jury on the permissible use of defendant's prior criminal convictions. Lastly, defendant contends that his sentence was impermissibly imposed under the literal language of § 11-37-2.

In the first issue on appeal defendant avers that the imposition of multiple sentences for one act of unlawful sexual penetration was constitutionally impermissible. U.S. Const.Amend. V; R.I. Const. art. 1, sec. 7. The defendant agrees however, that both counts of the indictment, one for unlawful sexual intercourse on a physically helpless person, and the other for using force to effectuate sexual intercourse, were properly submitted to the jury. He contends that only *after* his multiple sentences were imposed did he become improperly subjected to being twice put in jeopardy.

From our examination of the record, we can find only one instance where defendant *arguably* presented the trial justice with a claim of double jeopardy. This occurred during defendant's motion for new trial where counsel argued that the jury's verdicts were "legally inconsistent." However, it is well settled that a trial justice is prohibited from granting a new trial motion for errors of law occurring during trial. Super.R.Crim.P. 33; *see State v. Warren,* 624 A.2d 841, 843 (R.I.1993); *State v. Vanasse,* 593 A.2d 58, 67 (R.I.1991); *State v. Caruolo,* 524 A.2d 575, 585 (R.I.1987); *contra* Fed. R.Crim.P. 33. In fact, defendant concedes in his supplemental brief that a motion for new trial is not the appropriate vehicle by which to bring errors of law to the trial justice's attention. As a result the state contends that defendant has waived his defense of double jeopardy by failing to properly raise the defense pursuant to Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure.

Pursuant to Rule 12(b)(2)[2] the defense of double jeopardy is waived unless the defendant raises it by way of pretrial motion or the trial justice, in his discretion, permits an untimely but otherwise proper assertion of the defense. *State v. Lee,* 502 A.2d 332, 334 (R.I.1985); *State v. Sharbuno,* 120 R.I. 714, 722, 390 A.2d 915, 920 (1978). Only in limited circumstances will this court review a claim of double jeopardy despite its improper assertion. *Lee,* 502 A.2d at 334; *State v. Reis,* 430 A.2d 749, 755 (R.I.1981); *Sharbuno,* 120 R.I. at 722, 390 A.2d at 920; *see e.g., State v. Grullon,* 117 R.I. 682, 687-88, 371 A.2d 265, 268 (1977) (trial justice's consideration of double jeopardy claim on its merits at close of state's case, without opposition by the state, allowed this court to review as a Rule 12(b)(2) motion); *Thornley v. Mullen,* 115 R.I. 505, 510-11, 349 A.2d 158, 161 (1975) (untimely double jeopardy claim was not waived given relevant intervening decision of this court). To come within these narrow circumstances, it is incumbent upon a defendant "to show cause why relief should be granted notwithstanding the untimely assertion of the defense." *Lee,* 502 A.2d at 334 (citing *Sharbuno,* 120 R.I. at 722, 390 A.2d at 920).

In the instant case, defendant never *properly* brought the defense of double jeopardy to the trial justice's attention. Nor do the present facts give rise to one of the limited

---

**2.** Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure provides:

"**Defenses and Objections Which Must Be Raised.** The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or failure of the indictment, information, or complaint to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."

situations wherein this court will address a double jeopardy claim despite its improper assertion. *Cf. Grullon,* 117 R.I. at 687–88, 371 A.2d at 268; *Thornley,* 115 R.I. at 510–11, 349 A.2d at 161. We note that if defendant had any concern over his possible conviction and sentencing on both counts of the indictment it should have been *properly* brought to the trial justice's attention for his consideration. This had to have been done pursuant to Rule 12(b)(2) either by way of a pretrial motion or through an otherwise *permissible* avenue to enable the trial justice to consider whether he would entertain an untimely assertion of the defense. In the instant case no record exists of either of these permissible methods being utilized.

Consequently, defendant's failure to present a procedurally proper double-jeopardy defense constitutes a waiver thereof under Rule 12(b)(2). *Reis,* 430 A.2d at 754–55. As a result, the merits of defendant's claim can not be reached. However, we dismiss the appeal on this issue without prejudice and with leave to seek relief in the Superior Court within 120 days pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure.

■ The defendant next contends that the trial justice committed reversible error by failing to adequately caution the jury on the limited permissible use of defendant's prior criminal convictions. Specifically, defendant avers that the trial justice erred in omitting to instruct the jury that the convictions have no probative force as proof of elements of the crime charged.

During the cross-examination of defendant the prosecution made use of defendant's prior criminal convictions in an effort to impeach his credibility. Shortly thereafter the prosecution asked defendant, "And your dealing—the fact that you had to deal with the police on that night was nothing new to you, was it?" In response to defense counsel's objection to this question, the trial justice stated:

> "Objection is sustained. Ladies and gentlemen, of the jury, let me advise you at this point—I will advise you again later—that certain evidence has just been presented before you of convictions of this particular witness. Those are only to be regarded by you on the issue of credibility of the witness, and for no other purpose than credibility."

During his charge to the jury, the trial justice again admonished the jury on the permissible use of defendant's prior criminal convictions.[3]

■ It is well settled in this jurisdiction that arguments on appeal that have not been adequately and properly presented to the trial justice for his or her consideration cannot appropriately be brought before us. *See State v. Tempest,* 651 A.2d 1198, 1215 (R.I. 1995) (defendant's objection to the admission of evidence simply on the ground of relevancy was insufficient to allow R.I.R.Evid. 404(b) argument on appeal); *State v. Byrnes,* 433 A.2d 658, 671 (R.I.1981) (evidence of defendants' attempt to "coerce" witness into silence was not properly objected to when evidence was adduced and as such was deemed waived); *State v. Freitas,* 121 R.I. 412, 417, 399 A.2d 1217, 1220 (1979) (defendant's failure to object to prosecutor's remarks foreclosed raising issue for the first time on appeal). To be deemed adequate, an objection must be specific so as to direct the trial justice's attention to the precise issue in question. *See Tempest,* at 1215. This allows the trial justice to sufficiently consider the issue and take any necessary corrective action. Therefore, "a blanket or general objection will not suffice." *State v. Duggan,* 414 A.2d 788, 791 (R.I.1980).

In the instant case, there was never *any* objection to the sufficiency of the trial justice's limiting instructions to the jury regarding the use of defendant's prior convictions.

---

3. The trial justice stated,

"Under Rhode Island law, the fact that a person has previously been convicted of a criminal offense is allowed in evidence, and it can be properly considered by you the jury if you wish to consider it, only in the area of credibility. It

may be considered by you as a factor you could weigh with other factors in determining what weight you might decide to give to the testimony of such witness. Let me point out that a prior criminal conviction may be used by you only in the area of credibility and no other."

Nor does the instant case fall within the narrow exception to this "raise or waive" rule. *Cf. State v. Burke,* 522 A.2d 725, 731 (R.I.1987) (exception exists in certain limited circumstances for basic constitutional rights and novel rules of law); *accord State v. Donato,* 592 A.2d 140, 141 (R.I.1991). As such, defendant's appeal on this ground can not be heard.

■ In the last issue on appeal the defendant avers that the literal language of § 11–37–2 does not permit one act of sexual penetration to be punished twice even if that one act results in a violation of more than one subsection of § 11–37–2. A thorough search of the record reveals that this argument was never adequately and properly addressed to the trial justice for his consideration. Absent special circumstances, arguments not adequately and properly addressed to the trial justice cannot appropriately be brought before us. *Tempest,* at 1215; *Byrnes,* 433 A.2d at 671; *Freitas,* 121 R.I. at 417, 399

A.2d at 1220. A review of the record reveals no such special circumstances to warrant suspension of this rule in the instant case. *Cf. Burke,* 522 A.2d at 731 (exception exists in certain limited circumstances for basic constitutional rights and novel rule of law); *accord Donato,* 592 A.2d at 141. Therefore, the defendant's appeal on this issue can not be considered on its merits.

Accordingly, the defendant's appeal is denied and dismissed, and the judgment of conviction is affirmed without prejudice to defendant's proceeding pursuant to Rule 35 to contest his sentence within 120 days from the publication date of this opinion.