DECISION
Before this Court is petitioner, Gary Tassone's application for post-conviction relief in which he challenges his conviction after trial by jury for his murder of Kendra Hutter and seeks a new trial or a reduction in his sentence from life without parole to life with the possibility of parole. Court-appointed counsel has meticulously examined petitioner's claims, as raised in his petition and amended petition (including claims of ineffective assistance of counsel, witness perjury, evidence tampering, and prosecutorial misconduct), and has deemed them to be unmeritorious. He thus seeks to withdraw as counsel. Petitioner objects to his findings and his motion to withdraw.
This Court has considered the Rhode Island Supreme Court's decision in State v. Tassone, 749 A.2d 1112 (R.I. 2000), which affirmed petitioner's conviction and sentence, petitioner's petition for post-conviction relief, as amended, counsel's no-merit memoranda in support of his motion to withdraw, petitioner's memoranda in opposition to that motion, and the record of the January 15, 2008 post-conviction relief hearing. Finding petitioner's application for post-conviction relief to be unavailing, this Court simultaneously denies petitioner's petition for post-conviction relief in its entirety and grants counsel's motion to withdraw.[1] *Page 2 
 I FACTUAL BACKGROUND
The following facts are based on counsel's memoranda and the Rhode Island Supreme Court's decision in State v. Tassone,749 A.2d 1112 (R.I. 2000), which denied petitioner's appeal from his conviction and sentence. On June 30, 1994, the police discovered Ms. Hutter's body partially buried on Crescent Beach in Riverside, Rhode Island. Ms. Hutter had suffered numerous blows to the face, neck and skull, resulting in a fractured skull, broken jaw, and brain lacerations. There were also indications that Ms. Hutter attempted to defend herself, as there were lacerations on her forearms and fingers as well. The medical examiner determined that Ms. Hutter did not die immediately after the vicious attack, but rather lay helpless and bleeding for as long as fifteen minutes.
The same day that the police found Ms. Hutter's body, her estranged husband, Christopher Hutter, with whom she had been living, reported her missing to the Pawtucket Police Department. Mr. Hutter reported that Ms. Hutter had left their home the previous night at approximately 9:00 p.m. and had left behind a card with the name "Gary" and a telephone number written on it. Ms. Hutter indicated that if her husband needed to reach her, he could do so at that number. On July 1, 1994, the East Providence Police Department sent two detectives to the address that corresponded with the telephone number on the card. There, the detectives found petitioner Gary Tassone, who admitted knowing Ms. Hutter and having planned a date with her on June 29, 1994, the night of her death. The detectives asked petitioner to follow them back to the East Providence Police Department, which he willingly did.
At the police department, on the night of July 1, 1994 and into the morning of July 2, 1994, petitioner signed four separate statements in addition to two rights forms indicating that he *Page 3 
had been given and understood his Miranda warnings. Petitioner gave his first statement to the police detectives at approximately 8:00 p.m. on July 1, 1994. This statement did not contain any incriminating statements. Petitioner claimed that although he had planned to go on a date with Ms. Hutter, the rendezvous never occurred. Shortly thereafter, at 8:45 p.m., petitioner signed the first Miranda rights form.
Petitioner gave a second statement, dated July 1, 1994, at 10:45 p.m., approximately two hours after the police gave him his first Miranda warnings. Petitioner admitted going out with Ms. Hutter, taking her in his car to Crescent Beach in Riverside, and having sexual intercourse with her on a blanket at the beach before driving her home.
In a third statement, given approximately one hour after the second, petitioner amended his initial statement to add that after having intercourse with Ms. Hutter, he accidentally hit her in the face with a shovel because something "jumped in the woods and scared" him. Afraid that he had killed her, petitioner indicated that he proceeded to bury the victim with sand before dumping the shovel and the blanket across the Massachusetts state line.
The next morning, at approximately 10:00 a.m., petitioner signed a new rights form and in a fourth statement included more details about the night of Ms. Hutter's murder. Petitioner finished this final statement with a request for the police detectives to retrieve a gun he had hidden in his room at his mother's house. After signing this last statement, petitioner gave the East Providence detectives directions to the area where he had dropped the shovel and blanket and showed the detectives the precise location of the evidence. *Page 4 
 II PROCEDURAL HISTORY
On October 28, 1994, a grand jury returned an indictment charging petitioner with one count of murder in violation of R.I. Gen. Laws § 11-23-1 for killing Kendra Hutter on or about June 29, 1994. The case went to trial by jury before Ms. Justice Corrine P. Grande on January 7, 1997. Court-appointed counsel, James Ruggiero, represented petitioner at trial. Recognizing that petitioner's own written statements from the night he was interviewed by the detectives were the most damaging evidence against his client, trial counsel filed a motion to suppress those statements and called petitioner to testify at the hearing on the motion. He also called petitioner's mother to testify that, on the night that petitioner gave the statements, he was incoherent and exhausted. Additionally, trial counsel vigorously cross-examined the police detectives about the circumstances surrounding their interrogation of petitioner. Trial counsel's goal was to show that petitioner gave the statements involuntarily and that they were, therefore, inadmissible. Ultimately, the Court denied the suppression motion and allowed the State to admit the statements into evidence at trial. At trial, counsel recalled the witnesses from the suppression hearing in an attempt to convince the jury that the statements were unreliable.
On January 28, 1997, the jury returned a guilty verdict. Justice Grande sentenced petitioner to life in prison without the possibility of parole on May 5, 1997. Trial counsel filed an appeal of the conviction and sentence to the Rhode Island Supreme Court, after which he withdrew by court order and the Department of the Public Defender represented the defendant on appeal. The Supreme Court unanimously upheld his conviction and sentence inState v. Tassone, 749 A.2d 1112 (R.I. 2000). *Page 5 
On December 9, 1997, petitioner filed a pro se request for post-conviction relief in the criminal case, alleging ineffective assistance of counsel. A hearing justice appointed Gerard Donley to represent petitioner in connection with this request, even though defendant's appeal was pending. After the Supreme Court denied the appeal on April 27, 2000, Mr. Donley withdrew as counsel, with court approval, because defendant filed disciplinary charges against him for failure to prosecute the post-conviction relief action, even though it had been filed prematurely.
On August 4, 2000, petitioner filed the instant miscellaneous petition for post-conviction relief, pursuant to R.I. Gen. Laws § 10-9.1-1, on the grounds of ineffective assistance of counsel and witness perjury. A hearing justice and the trial justice appointed Mary Ciresi to represent petitioner as post-conviction relief counsel and to serve as defendant's counsel at the hearing in the criminal case on his motion to reconsider sentence. Trial counsel James Ruggiero had filed the motion for reconsideration before he withdrew as counsel following petitioner's unsuccessful appeal. In May 2001, Justice Grande denied defendant's motion for reconsideration and Ms. Ciresi asked that the post-conviction relief petition be passed, to be reassigned at her later request. Ms. Ciresi obtained copies of the trial transcripts, but later withdrew as petitioner's counsel, with court approval, on November 26, 2002, due to an alleged conflict of interest. On December 16, 2002, a hearing justice next appointed Robert Watson to represent petitioner and subsequently granted him permission to withdraw on May 9, 2005 after petitioner alleged ineffective representation on his part. Finally, a hearing justice appointed Anthony Amalfetano to represent petitioner on August 4, 2005, and he has served as petitioner's attorney in connection with this post-conviction relief action. *Page 6 
Petitioner asked his current counsel to have his written statements and Miranda rights forms examined by a forensic document expert and to obtain police reports from the Cumberland Police Department in the hope of showing that he was a suspect in the crime before he spoke with the East Providence police detectives. Counsel undertook that expert examination and found no evidence to support petitioner's claims. On January 10, 2008, after consulting with petitioner and reviewing the case, counsel filed a no-merit memorandum, pursuant to the requirements of Shatney v. State, 755 A.2d 130 (R.I. 2000), and a concomitant motion to withdraw. Specifically, counsel found unmeritorious petitioner's four primary contentions, namely that:
 (1) . . . Ruggiero failed to adequately prepare the matter for trial;
 (2) . . . [T]he East Providence [d]etectives committed perjury during the course of their testimony at the suppression hearing and during the trial as they testified to the taking of the written statements from the Petitioner;
 (3) . . .[T]he [d]etectives committed perjury when they testified that the Petitioner `pointed out' where the shovel and blanket were found;. . .[and]
 (4) Ruggiero was ineffective because he requested a reassignment of a trial date on May 30, 1996 by telling the judge that he needed additional time to prepare for the trial . . . and . . .since no expert witnesses were called by [Ruggiero] after he told the judge he was conferring with same, that resulted in ineffective representation.
Before filing his no-merit memorandum, counsel had several conferences with petitioner at the Adult Correctional Institutions, where petitioner is incarcerated. At these conferences, counsel sought to ascertain the details of the allegations petitioner desired to make in support of his petition for post-conviction relief.[2] Counsel also reviewed all of the documents prepared by petitioner in support of his petition, and examined petitioner's Superior Court criminal file, [3] including police reports, witness statements, pleadings, motions, and discovery. He also *Page 7 
obtained and read in detail the trial transcript. Outside of his meetings with petitioner, counsel conferred with James Ruggiero, petitioner's trial counsel, and Assistant Attorney General Paul Daly, the lead prosecutor at trial. Moreover, when counsel learned of petitioner's request for forensic examination of theMiranda rights forms and the statements that he made after signing the forms, counsel obtained the original exhibits and engaged a certified document examiner to verify their authenticity and ascertain whether they had been altered. When that examination proved unfruitful and petitioner continued to question whether he should have been read his Miranda rights before he was asked to come to the police station, counsel explained to him that the detectives administered the Miranda warnings at the appropriate time, citing Rhode Island case law.
This Court convened a hearing on January 15, 2008, with petitioner present, to address his post-conviction relief petition, counsel's no-merit memorandum and motion to withdraw, and petitioner's response to his counsel's filings. At the hearing, petitioner sought to add additional grounds to his petition for post-conviction relief via a pro se motion to amend, to wit: (1) destruction of evidence by detectives; (2) manipulation of evidence by detectives; (3) manufacturing of evidence by detectives; and (4) prosecutorial misconduct.[4] Moreover, petitioner complained that counsel did not address all of his contentions in his initial no-merit memorandum accompanying his motion to withdraw. Although not required to do so, this Court made sure that petitioner had a full and fair opportunity to assert all arguments that he had in support of his request for post-conviction relief and allowed him to amend his petition accordingly. It then directed counsel to file a supplementary Shatney memorandum to ensure that *Page 8 
he addressed all of petitioner's claims. On February 28, 2008, counsel filed a supplemental no-merit memorandum and reasserted his motion to withdraw.
Before filing his supplemental no-merit memorandum, counsel conferred again with petitioner at the ACI to discuss the specifics of petitioner's additional claims. Counsel then filed a supplemental no-merit memorandum, which specifically identified and rejected as unmeritorious all seven additional substantive claims raised by petitioner, both at the hearing and in conferences with counsel, namely that: (1) trial counsel committed perjury at trial in stating that he needed additional time for expert witness preparation; (2) trial counsel was ineffective because he requested forensic examination of the wrong document; (3) the East Providence police detectives committed perjury by testifying that petitioner was not a "suspect" before their first encounter with him; (4) the police either hid or destroyed secondary evidence that could prove that the detectives planted evidence in petitioner's car; (5) the only evidence linking petitioner to the crime was manufactured by the East Providence Police Department, a fact that could be proven by local experts who post-conviction relief counsel failed to contact; (6) evidence exists to prove that someone other than petitioner committed the crime; and (7) post-conviction relief counsel lied in his Shatney memorandum by stating that the examination of documents by the forensic expert indicated that they had not been altered or manipulated.
Petitioner responded to counsel's supplemental no-merit memorandum by asserting that the police detectives committed perjury to get a search warrant and that there is an eye witness stating that petitioner's car is not the one the victim left in on the day of her murder. Because petitioner did not raise these latter issues until after post-conviction relief counsel filed his supplemental no-merit memorandum, they are untimely. *Page 9 
 III ANALYSIS A The Shatney Procedure
In representing a petitioner in connection with his or her application for post-conviction relief, court-appointed counsel reviews the application with petitioner and investigates those issues that petitioner seeks to raise, as well as other issues counsel deems appropriate, and determines whether those issues are meritorious and deserve to be presented to the Court for its determination. See Shatney v. State, 755 A.2d 130 (R.I. 2000) (per curiam). Under Shatney, if counsel determines that the petition lacks merit and thus seeks to withdraw as counsel, the attorney must:
 file with the court and serve upon the applicant a motion to withdraw accompanied by a "no-merit" memorandum that details the nature and extent of his or her review of the case, lists each issue the applicant wished to raise, and explains why in counsel's professional opinion those issues and any others that he or she may have investigated lack merit. The court then must conduct a hearing with the applicant present. If, based upon its review of counsel's assessment of the potential grounds for seeking post-conviction relief and of any other issues that the applicant wishes to raise, the court agrees that those grounds appear to lack any arguable merit, then it shall permit counsel to withdraw and advise the applicant to proceed pro se, if he or she chooses to pursue the application.
Shatney, 755 A.2d at 135.
After the Shatney hearing, at which the petitioner may fully express his or her concerns, if the Court agrees that petitioner's claims are wholly meritless, it may simultaneously dismiss the petition for post-conviction relief and grant counsel's motion to withdraw. See Thornton v. *Page 10 State, 948 A.2d 312, 316-17 (R.I. 2008). Specifically, as the Rhode Island Supreme Court elaborated in Thornton:
 [When] the trial justice, having reviewed the memoranda of applicant and his court-appointed counsel and having heard oral argument with respect to same, determine[s] that [the applicant's] application for postconviction relief [is] unavailing, it is our view that to permit the applicant to proceed on a pro se basis . . . would [be] an exercise in futility and an inefficient use of resources.
Id.
In the case at bar, counsel fulfilled all of his procedural obligations under Shatney. He had numerous meetings with petitioner, addressed in his no-merit memoranda each issue petitioner sought to raise, allowed petitioner to respond in writing to each of counsel's memoranda, and explained why each of petitioner's post-conviction claims lack merit. This Court, in accordance with Shatney, conducted a hearing on petitioner's post-conviction relief application with the petitioner present. This Court now must determine whether it agrees with counsel's contention that petitioner's grounds for relief "appear to lack any arguable merit. . . ." Shatney, 755 A.2d at 135.
 B The Merits of Petitioner's Claims for Post-ConvictionRelief
The Rhode Island Post-Conviction Relief Act permits any person who has been convicted of a crime and who claims that the "conviction or sentence was in violation of the constitution of the United States or the constitution or laws of [Rhode Island]" to file an action for post-conviction relief. Section 10-9.1-1(a)(1). "In proceedings under [the Post-Conviction Relief Act]," however, "the petitioner generally bears the burden of proving his allegations by a preponderance of the evidence." Palmigiano v. Mullen,377 A.2d 242, 248 (R.I. 1977). Although a claim of error, other than ineffective assistance of counsel, must be raised during the *Page 11 
appropriate phase of the process, either pre-trial, at trial, or on appeal, Cronan ex. rel. State v. Cronan,774 A.2d 866, 877 (R.I. 2001), a post-conviction relief proceeding is the appropriate forum to allege violations of theSixth Amendment to the United States Constitution and Article I, Section 10 of the Rhode Island Constitution for ineffective assistance of counsel. State v. Gibbons,418 A.2d 830, 839 (R.I. 1980); State v. Freitas,399 A.2d 1217, 1219 (R.I. 1979); State v. Levitt,371 A.2d 596, 599-600 (R.I. 1977). In his petition for post-conviction relief, petitioner raises claims of ineffective assistance of counsel as well as other claims of error that this Court must address.
 1. Ineffective Assistance of Counsel
Petitioner offers several reasons why trial counsel's representation of him at trial was ineffective and thus violated his federal and state constitutional rights to counsel. He claims that trial counsel perjured himself to the trial justice about whether he was going to get expert witnesses, requested a reassignment of the trial date for the purpose of consulting with his experts, requested document examination on the wrong documents, and generally failed to prepare adequately for trial. Post-conviction relief counsel disputes all of these claims and asserts that his review of the case led him to conclude that, far from being inadequate, trial counsel's representation of petitioner at trial was superb. Moreover, counsel contends that many of petitioner's complaints only go to show the lengths to which trial counsel went to ensure adequate preparation for trial and therefore undermine petitioner's claims.
 a. Standard of Review
The Rhode Island Supreme Court has determined that the state constitutional guarantee of effective assistance of counsel is essentially co-extensive with the federal guarantee articulated by the United States Supreme Court in Strickland v. Washington,466 U.S. 668 (1984). *Page 12 Bustamante v. Wall, 866 A.2d 516, 522 (R.I. 2005) ("When reviewing claims of ineffective assistance of counsel, this Court has adopted the standard enunciated in Strickland. . . .").[5] Strickland established a two-pronged test in which the defendant first must prove that "counsel's performance was deficient," to the degree that he or she "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland,466 U.S. at 687. The second prong requires the defendant to show that counsel's poor performance prejudiced the defense. This prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . whose result is reliable." Id. Finally, unless a defendant can prove both prongs of this test, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." Id. The core issue in reviewing ineffective assistance of counsel claims, then, is "whether `counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having a just result.'"Bustamante, 866 A.2d at 522 (citing Toole v. State,748 A.2d 806, 809 (R.I. 2000), quoting Tarvis v. Moran,551 A.2d 699, 700 (R.I. 1988)).[6]
In considering the first prong of the test, the Rhode Island Supreme Court has clarified the Strickland standard, holding that "mere tactical decisions, though ill-advised, do not by themselves constitute ineffective assistance of counsel."Id. at 523 (quoting Toole, 748 A.2d 809). Even if trial counsel makes a decision that the trial justice considers "unthinkable," that does not support a finding of ineffective assistance of counsel. Brown v. State,964 A.2d 516, 534 (R.I. 2009) (emphasis added). Indeed, a court must indulge "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Strickland, *Page 13 466 U.S. at 689; Hazard v. State,968 A.2d 886, 892 (R.I. 2009). "[E]very effort must be made to eliminate the distorting effects of hindsight." Id.[7]
Under the second prong of the test, to prove prejudice to his or her case, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.[8] "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."Id. at 693. As the Rhode Island Supreme Court has noted, this is a "prodigious burden." Evans v. Wall,910 A.2d 801, 804 (R.I. 2006). "[A] single instance of failure or omission by counsel is unlikely" to demonstrate ineffective assistance of counsel. Brown v. State,964 A.2d at 528 (quoting Heath v. Vose,747 A.2d 475, 479 (R.I. 2000)). Instead, the Court "look[s] at the entire performance of counsel" because "when that performance is deficient in a number of respects, then the possibility is greater that an accumulation of serious shortcomings prejudiced the defendant to a sufficient degree to meet the Strickland
requirement." Id.
 b. Evaluating the Performance of Trial Counsel
Petitioner first claims that trial counsel committed perjury before the trial justice by misrepresenting, as part of an argument in support of his motion to reduce bail, that a hearing justice would not allow any more money for experts he deemed necessary. Petitioner also claims that trial counsel stated that he wanted to consult experts, but that he did not do so, and that this *Page 14 
assertion not only constituted perjury, but also evidenced inadequate preparation. But at the hearing at which petitioner claims trial counsel perjured himself, all trial counsel said was that he needed more time to consult with his defense experts and that he needed more money for his experts. Indeed, trial counseldid retain the services of a DNA expert and commissioned a psychiatric evaluation.
It is thus disingenuous for petitioner to suggest that his trial counsel would have retained additional experts if the Court had allowed more monies for his defense or if he had more time to prepare. Petitioner has failed to elucidate how additional experts could have assisted his defense. Moreover, decisions about whether to retain or call expert witnesses are tactical decisions which, even if ill-advised, generally are not subject to second-guessing in post-conviction relief proceedings. Larngar, 918 A.2d at 861. Accordingly, petitioner's claim that trial counsel perjured himself, and that in so doing and by not engaging enough experts inadequately prepared for trial, is baseless.
Petitioner's next claim, that trial counsel's representation was inadequate because he requested a reassignment of the trial date, is ludicrous. Trial counsel specifically indicated that the reason he was requesting a reassignment was because he had just finished with a different trial and needed time to prepare for this new trial. The fact that trial counsel sought and received more time to prepare his defense of petitioner actually militates against petitioner's claim of ineffective assistance of counsel. Clearly, trial counsel was concerned and involved enough in petitioner's case to attempt to consult with experts in search of viable methods of defending his client against the evidence he knew the State would offer. The delay did not diminish counsel's ability nor did it prejudice the trial. Quite the contrary, given that one of the reasons trial counsel *Page 15 
requested the delay was that he had just finished with a previous trial, the delay undoubtedly improved the quality of petitioner's representation.
Petitioner also contends that trial counsel ineffectively represented him because he failed to have the correct statement andMiranda forms analyzed to prove petitioner's contention that he signed the first Miranda rights form before making any statements, without any date or time, and that he was not administered his Miranda rights on July 2, 1994, the date of his fourth statement. Of course, the forensic document analysis performed at post-conviction relief counsel's behest failed to substantiate petitioner's claims in this regard. Moreover, petitioner signed a Miranda rights form indicating that he understood his rights. Given the wide deference due trial counsel under the first prong of the Strickland test and the absence of proof of prejudice, even if trial counsel failed to have the correct documents examined forensically, that does not constitute ineffective assistance of counsel.
Lastly, petitioner claims that trial counsel failed to adequately prepare his case for trial. This complaint seemingly contradicts petitioner's earlier contention that trial counsel's assistance was inadequate because he requested a delay in the trial so as to better prepare himself. More to the point, petitioner has not explained how this allegedly inadequate preparation for trial manifested itself. Petitioner has not indicated to this Court any action taken (or not taken) or statement made (or not made) by trial counsel at trial that actually prejudiced him. Trial counsel aggressively attempted to prevent the prosecution from introducing petitioner's incriminating statements into the record. When he failed in this endeavor, trial counsel called witnesses to testify on petitioner's behalf and aggressively cross-examined the state's witnesses. There is nothing in the record to support any conclusion other than that trial counsel competently represented petitioner to the best of his ability. *Page 16 
Ultimately, it is highly unlikely that even the most skilled trial counsel could have successfully overcome the substantial evidence — much of which, it is worth noting, petitioner voluntarily provided to the East Providence police detectives — weighing against petitioner's claimed innocence. After sand from the victim's grave was found in petitioner's car, and petitioner not only admitted to hitting the victim with a shovel, burying her, and disposing of the weapon, but also led the police detectives straight to the murder weapon, any defense attorney would have been hard-pressed to convince a jury of petitioner's innocence. Keeping in mind the United States Supreme Court's admonishment that only errors that were "so serious as to deprive the defendant of a . . . trial . . . whose result is reliable" can fulfill the Strickland
standard, it is clear that petitioner's claim that he received ineffective assistance of counsel is unavailing.Strickland, 466 U.S. at 467. Even assuming,arguendo, that trial counsel made errors, none of these mistakes could be said to have contributed significantly to the ultimate verdict or sentence. Petitioner has failed to satisfy this Court that trial counsel's actions during trial, and his relative preparation or lack thereof, deprived petitioner of a fair trial. Accordingly, this Court finds petitioner's claim of ineffective assistance of counsel to be wholly without merit.
2. Other Claims for Post-Conviction Relief
Petitioner raises numerous claims supporting his application for post-conviction relief in addition to his contention that he received ineffective assistance of counsel. Petitioner claims that the East Providence police detectives committed perjury when testifying about the written statements petitioner gave them, the time when petitioner became a subject, and their trip with him to the location in Massachusetts where he pointed out the location of the murder weapon. Petitioner also alleges that the police detectives fabricated, destroyed, concealed, and planted evidence and that evidence exists linking the victim's husband, and not petitioner, to the crime. *Page 17 
His post-conviction relief counsel responds that petitioner offers no concrete evidence in support of his contentions and that the jury had an opportunity to assess the relative credibility of petitioner and the police detectives.
 a. Standard of Review
As noted earlier, any objections to the validity of a conviction, raised in an action for post-conviction relief, but not raised properly at trial or on appeal, are barred from review under the Post-Conviction Relief Act. Section 10-9.1-8;[9] Cronan,774 A.2d at 877; State v. Carvalho,450 A.2d 1102, 1104 (R.I. 1982); R.I. Super. Ct. R. Crim. P. 12(b)(2). Specifically, section 19-9.1-8 "provides a procedural bar not only to issues that have been raised and decided in a previous post-conviction relief proceeding, but also to `the relitigation of any issue that could have been litigated in a prior proceeding, even if the particular issue was not raised.'"Ferrell v. Wall, 971 A.2d 615, 620 (R.I. 2009) (quotingOuimette v. State, 785 A.2d 1132, 1138 (R.I. 2001)) (emphasis in original).[10]
Although this "raise or waive" rule in Rhode Island jurisprudence is wide-ranging and absolute, the Court can discern three narrow exceptions to it. First, the Rhode Island Supreme Court will:
 review . . . questions concerning basic constitutional rights, notwithstanding a defendant's failure to raise the issue at trial [under] the following circumstances. First, the error complained of must consist of more than harmless error. Second, the record must be sufficient to permit a determination of the issue. Third, counsel's failure to raise the issue at trial must be due to the fact *Page 18 
that the issue is based upon a novel rule of law of which counsel could not reasonably have known at the time of trial.
State v. Burke,522 A.2d 725, 731 (R.I. 1987) (citations omitted).
Secondly, the Rhode Island Supreme Court has approved the granting of an application for post-conviction relief seeking a new trial based on newly discovered evidence under narrowly defined circumstances. To prevail with such a petition, the petitioner must prove that the evidence satisfies a two-pronged test:
 The first part is a four-prong inquiry that requires that the evidence be (1) newly discovered since trial, (2) not discoverable prior to trial with the exercise of due diligence, (3) not merely cumulative or impeaching but rather material to the issue upon which it is admissible, [and] (4) of the type which would probably change the verdict at trial. . . . Once this first prong is satisfied, the second prong calls for the hearing justice to determine if the evidence presented is "credible enough to warrant a new trial." State v. L'Heureux, 787 A.2d 1202, 1206-1207 (R.I. 2002) (quoting State v. Gomes, 690 A.2d 310, 321 (R.I. 1997) (quoting State v. Hernandez, 641 A.2d 62, 72 (R.I. 1994))).
Finally, there is a broad statutory exception to the "raise or waive" rule where "the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief." Section 10-9.1-8. The phrase "interest of justice" can be defined "only upon a review of the facts in a particular case."Ferrell, 971 A.2d at 621. For this exception to apply, there "must be some sufficient finding, articulation, or explanation by the . . . justice [hearing the post-conviction relief application] that an issue barred by the doctrine of res judicata merits consideration in the interest of justice." Id. *Page 19 
 b. Application of the "Raise or Waive" Rule
It does not appear that any of petitioner's other claims for post-conviction relief were raised at any point during his trial.[11] The question, then, is whether any of the supplemental grounds for relief raised by petitioner are barred by resjudicata under the Post-Conviction Relief Act.
This Court finds that all of petitioner's supplementary allegations supporting his application for post-conviction relief, consisting primarily of accusations of perjury, evidence tampering, and exculpatory evidence, could have been raised at trial. Because they were not, the post-conviction relief statute bars their consideration here absent the application of one of the exceptions to the "raise or waive" rule articulated by the Rhode Island Supreme Court.
First, the new constitutional doctrine exception to the "raise or waive" rule is clearly inapplicable to this case. Neither the United States Supreme Court nor the Rhode Island Supreme Court has broken any new ground in relevant constitutional jurisprudence. Petitioner does not identify any new state or federal cases that would tend to support the necessity of a new trial.
The second exception, which permits the consideration in post-conviction relief proceedings of newly discovered evidence, similarly does not apply to the circumstances at bar. First, petitioner fails to substantiate the existence of new evidence of perjury, evidence tampering or another party's guilt. Even assuming,arguendo, that such evidence exists, none of it could fulfillany of the four prerequisites for admissibility of "newly discovered" evidence in a post-conviction relief proceeding. Any such evidence, such as proof that the East Providence police *Page 20 
detectives lied at trial, planted sand in petitioner's car or planted the blanket found on the roadside in Massachusetts, or that the victim's husband committed the crime undoubtedly would have existed at the time of trial and would be excluded therefore by the first prong of the inquiry. Moreover, any such evidence would have been "discoverable prior to trial with the exercise of due diligence," L'Heureux, 787 A.2d at 1206, in violation of the second prong of the test. Indeed, petitioner makes no claim that any such evidence did not exist at the time of trial or would not have been discoverable before trial in the exercise of due diligence. For example, petitioner claims that the testimony of an eye witness can prove that Ms. Hutter got into a car with someone else on the night of her murder. Petitioner provides a description of a supposed interview with a girl who claims to have witnessed the events outside Ms. Hutter's house on the day of her murder. But this interview was conducted before the conclusion of the trial and thus cannot be considered newly discovered. Because any allegation of newly discovered evidence must meet every prong of the inquiry, further analysis of the evidence petitioner alleges under this exception to the "raise or waive" rule is unnecessary.
Finally, this Court finds petitioner has failed to show how pursuing these additional claims for relief, notwithstanding his failure to raise them at trial, would serve the "interest of justice." First, petitioner claims that the East Providence police detectives committed perjury with respect to their testimony about taking written statements from him. He claims that the fact that the time indicated at the top of one of the Miranda forms was manipulated proves that the detectives did not administer theMiranda warnings to him at the time they asserted. After conducting a review of the white-out mark under the indicated time "2050," the document examiner hired by counsel to evaluate petitioner's allegations found that the document originally bore the time "0850." (Affidavit of Hartford R. Kittel, 4.) It appears that the detectives initially *Page 21 
may have written the time in the way that comes naturally to most civilians, that is, based on a 12-hour clock where 0850 means either 8:50 a.m. or 8:50 p.m., and later corrected it to the more precise military time of 2050 (8:50 p.m.) so as to dispel any confusion.
The document examiner's report also refutes the allegation that the documents are invalid because they were prepared using different typewriters or because certain information was added after petitioner signed the statements. According to the document examiner, the only statement that includes text in the body that is not in alignment with the other text, and therefore possibly added after the statement was initially prepared, is petitioner's first statement. (Affidavit of Hartford R. Kittlel, 5-7.) Not only does this statement lack any of the incriminating admissions which characterized the much more damaging statements petitioner gave later, but the only paragraph in that statement that the document examiner found to be out of alignment reads as follows:
 [Kendra] never mentioned any other names besides her ex-husband that she has had arguments with. Yesterday I got a call from a guy named Chris around 4:00PM. He left a message on my machine asking me if I knew where Kendra was. I called him back about 10 minutes later. I told him we had plans for that night but she cancelled them.
(First Witness Statement, 2.) Even assuming, arguendo, that the detectives added this paragraph to the statement after petitioner signed it, it is unclear to this Court how the addition of this paragraph could have had any adverse effect on petitioner's case.
In a corollary to this claim, petitioner contends that his post-conviction relief counsel lied in his first memorandum when he wrote that, based upon the examination of the documents in question, he was "not prepared to state that the documents . . . were altered or doctored in any way." (Counsel's Memorandum of Law in Support of Motion to Withdraw as Plaintiff's Attorney of Record at 11.) Of course, the replacement of "0850" with "2050" is quite literally an *Page 22 
alteration, but it did not meaningfully change the rights form in any way. Additionally, whether the police actually gave petitioner his rights at 8:50 in the morning or at night, both of those times are before each of petitioner's statements except the first one, which generally contained no incriminating admissions. Petitioner's allegations of witness perjury and evidence tampering with respect to his statements and the rights forms are thus specious.
Petitioner also claims that the East Providence police detectives committed perjury when they testified that he "pointed out" the location of the shovel and blanket that he had dumped in Massachusetts. He claims that, since he was in handcuffs, he would have been incapable of "pointing" something out. Of course, in addition to its literal meaning, "point out" also has a figurative meaning that more than accurately describes petitioner's actions, regardless of whether he was in handcuffs. Petitioner rode with detectives in their vehicle, showed them where to stop, exited, and indicated to them the general area where they could find the shovel and blanket. Clearly, the detectives merely meant to convey this general, factual description of petitioner's cooperation with them in locating the evidence and committed no perjury in this regard.
Petitioner further alleges that the East Providence police detectives lied about when he became a suspect in Ms. Hutter's murder, that they therefore committed perjury, and that his statements are invalid because he should have been read hisMiranda rights earlier in the investigative process. Petitioner also faults counsel for failing to provide him with Cumberland Police Department records that prove that he was a suspect before being read his Miranda rights. Regardless of when petitioner became a suspect, however, under Rhode Island and United States case law, the police have no obligation to read a suspect his or her Miranda rights until they both take the suspect into custody and interrogate him or her. State v.Briggs, 756 A.2d 731, 737 (R.I. 2000); *Page 23 Stansbury v. California, 511 U.S. 318, 324 (1994).[12]
Whether the Cumberland Police Department's records prove that petitioner was suspected of committing this crime or any other crime at any time before he was taken into custody at the East Providence Police Department on the night of July 1, 1994 is thus wholly immaterial. Petitioner voluntarily spoke with the police detectives when they arrived at his house. He voluntarily accompanied them to the East Providence Police Department. He voluntarily gave the first, unincriminating statement to the detectives. Thereafter, when the detectives thought it necessary to take him into custody, they properly gave him hisMiranda rights. Petitioner faults the detectives for testifying that he was not the suspect when they arrived at his house despite Cumberland Police records indicating that the East Providence police detectives told the Cumberland police detectives otherwise. Whether he was the suspect or simply a suspect is essentially a semantic difference and, in this case, wholly irrelevant.
Next, petitioner alleges the existence of secondary evidence that was either destroyed or not disclosed that could prove that the East Providence police detectives planted evidence in his car. Specifically, petitioner claims that the detectives took sand from Ms. Hutter's gravesite and planted it in his car and that the detectives obtained a blanket that he had previously used and also planted it. He claims that expert witnesses could prove his allegations.
With regard to the sand, petitioner does not believe that it would have been possible for sand from inside the grave to be transferred to the driver's side floor of his car in the natural course of his returning to his car because the car was parked some distance from the grave. His contention in this regard is completely speculative. Arguably, sand, undoubtedly moist from being excavated from a beach, could cling to petitioner's shoes, pants, or hands for several *Page 24 
hundred feet. Petitioner does not indicate the nature of any expert he would call to substantiate his unsupported allegations, and it seems unlikely at best that any tests or experts could prove anything about the sand evidence or the blanket fifteen years after the event.
Along these lines, petitioner represents that all of the evidence linking him to the crime was manufactured by the East Providence police detectives, including the pictures of the blanket and shovel where he dumped them in Massachusetts. As his counsel noted, though, "[t]his assertion is completely contrary to [the testimony of] a number of trial witnesses." (Counsel's Supplemental Memorandum in Support of Motion to Withdraw as Plaintiff's Attorney of Record at 8.) For the petitioner to prevail on this point, not only would pictures taken of the blanket and shovel have to have been staged, but so would witness testimony and evidence given at trial. Against this formidable barrier to his claim, petitioner raises no credible evidence to the contrary. Petitioner claims that the prosecutor's suggestion at trial that the lack of his fingerprints on the blanket or shovel could be explained easily by his having wiped the shovel with the blanket is false because no fabric or sand residue from the blanket was found on the shovel. The Court sees no reason why a cursory wipe to remove finger prints would necessarily leave fabric or sand on the shovel.
Petitioner also protests the testimony of the medical examiner, claiming that it is inconsistent with his statement. He claimed in his third statement, for example, that he only hit the victim once, whereas the medical examiner testified that Ms. Hutter had been hit fifteen times. It should be of little surprise, however, that the medical examiner's testimony differed from petitioner's, considering that he did not admit to murdering Ms. Hutter, and in fact pled not guilty, despite having confessed earlier to hitting her in the face with a shovel and burying her on *Page 25 
the beach. The jury was faced with the conflicting testimonies and came to the eminently reasonable conclusion that petitioner's testimony was not credible.
Finally, petitioner claims that evidence exists linking the victim's husband to the crime. He alleges inconsistencies between Mr. Hutter's testimony and that of Ms. Hutter's employer about the clothing she wore and the time she left work and claims that Mr. Hutter's refusal to let police search his home and car should raise suspicion. He claims that Mr. Hutter once said that "people who have sex are like dogs" and that this fact, along with the dog bowl allegedly found buried with Ms. Hutter's body, should implicate Mr. Hutter in his wife's murder. But petitioner's own admission that he was with Ms. Hutter at the beach on the night of her murder and his statement that he hit her in the face with a shovel and buried her weigh heavily against these self-serving allegations. Even assuming Mr. Hutter said what petitioner alleges, and that a dog bowl were found buried with the victim, the evidence still heavily suggests petitioner's guilt.
Petitioner raises no credible allegations to support any viable grounds for post-conviction relief. Moreover, because none of these issues were raised at trial, and none of them fall under any of the exceptions to the "raise or waive" rule, they are barred from this action for post-conviction relief. Petitioner clearly does not have any legitimate claims for relief. He makes any allegation, however unsubstantiated, that could even theoretically undermine his conviction or sentence. With each memorandum, his claims mutate and multiply. Petitioner's application for post-conviction relief can charitably be characterized as a "`moving target.'"Thornton, 948 A.2d at 315. Accordingly, this Court agrees with counsel and finds all of petitioner's stated grounds for post-conviction relief to be wholly frivolous and without merit. *Page 26 
 IV CONCLUSION
After a thorough review of all of the memoranda submitted by both counsel and petitioner, and having given petitioner the opportunity to address the Court and file documents in response to counsel's no-merit memoranda, this Court agrees with counsel that all of the claims underlying petitioner's application for post-conviction relief are frivolous and without merit. Consequently, counsel's motion to withdraw as counsel of record for petitioner in his application for post-conviction relief is granted. Additionally, mindful of the Rhode Island Supreme Court's observation that permitting a petitioner whose claims for relief have been deemed to be "unavailing" to proceed pro se with his application for post-conviction relief would constitute "an exercise in futility and an inefficient use of resources,"Thornton, 948 A.2d at 317, petitioner's petition for post-conviction relief is hereby denied and dismissed in its entirety, with prejudice.
The Clerk is directed to enter judgment in this case forthwith.
[1] Because the trial justice in this matter, Ms. Justice Corrine P. Grande, has retired, this Court considers the instant motion under R.I. Super. Ct. R. Prac. 2.3(d)(4).
[2] As noted above, at the time of counsel's meetings with the defendant, and before filing his first no-merit memorandum, petitioner's boilerplate petition for post-conviction relief contained only a barebones statement of his claims for relief: (1) ineffective assistance of counsel; and (2) witness perjury.
[3] See State of Rhode Island v. Tassone, C.A. No. P1 94-3384A (R.I. Super. Ct. 1994).
[4] It appears from petitioner's memoranda that this last claim of "prosecutorial misconduct" is merely a catch-all, implicating the prosecution in the allegations of perjury and evidence tampering by the detectives, instead of a separate substantive allegation.
[5] See Larngar v. State, 918 A.2d 850, 855-56 (R.I. 2007);Heath v. Vose, 747 A.2d 475, 478 (R.I. 2000); Brown v.Moran, 534 A.2d 180, 182 (R.I. 1987).
[6] See Pelletier v. State, 966 A.2d 1237, 1241 (R.I. 2009);Vorgvongsa v. State, 785 A.2d 542, 548 (R.I. 2001).
[7] See Larngar, 918 A.2d at 856; State v. Figueroa,639 A.2d 495, 500 (R.I. 1994).
[8] See Larngar, 918 A.2d at 856; Figueroa,639 A.2d at 500.
[9] This section provides: "All grounds for relief available to an applicant at the time he or she commences a proceeding under [the post-conviction relief statute] must be raised in his or her original, or a supplemental or amended, application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief." R.I. Gen. Laws § 10-9.1-8.
[10] See Ramirez v. State, 933 A.2d 1110, 1112 (R.I. 2007);Figueroa, 897 A.2d at 56-57; Carillo v. Moran,463 A.2d 178, 183 (R.I. 1983).
[11] In fact, it seems that the only issues raised by petitioner on appeal to the Rhode Island Supreme Court from his conviction involved the admission of his fourth statement, which included details that impeached his testimony about his state of mind during interrogation; the decision of the prosecutor to show the jury enlarged photographs of Ms. Hutter's mutilated corpse; and the trial justice's jury instructions. None of these claims is raised in petitioner's action for post-conviction relief. It also does not appear that any of the above-discussed grounds for post-conviction relief were raised at trial.
[12] See State v. Hobson, 648 A.2d 1369, 1371 (R.I. 1994);State v. Caruolo, 524 A.2d 575 (R.I. 1987); Miranda v.Arizona, 384 U.S. 436, 444 (1966).